The STATE of Ohio, Appellant,

v.

MELMS, Appellee.

The STATE of Ohio, Appellant,

v.

HURST, Appellee.

The STATE of Ohio, Appellant,

v.

JACKSON, Appellee.

[Cite as *State v. Melms* (1999), 131 Ohio App.3d 246.]

Court of Appeals of Ohio,
Third District, Logan County.

Nos. 8–98–18, 8–98–19 and 8–98–20.

Decided March 9, 1999.

*William T. Goslee*, City Prosecutor, for appellant.

*Marc S. Triplett*, for appellees Andrew D. Melms and Shannon M. Hurst.

THOMAS F. BRYANT, Presiding Judge.

These appeals have been consolidated and will be addressed together in this decision. The state of Ohio appeals from a judgment entered in the Bellefontaine Municipal Court granting appellees' motions to suppress the results of breathalyzer tests.

In addition to other traffic-related offenses,[1] appellees Melms and Hurst were charged with violating Ohio's Driving While Intoxicated ("DWI") statute, R.C. 4511.19(A)(1) and (A)(3), and appellee Jackson was charged with violating Bellefontaine's DWI Municipal Ordinance 333.01(A)(1) and (A)(3). Upon their separate arrests in January and February 1998, the appellees consented to alcohol-breath tests administered by the Logan County Sheriff's Department. All appellees tested on the same BAC Datamaster breathalyzer machine and were found to have a prohibited concentration of alcohol per two hundred ten liters of breath for purposes of operating a motor vehicle within the state of Ohio. R.C. 4511.19(A)(3). Finally, the same batch of chemical solution, Batch No. 97220, was used to calibrate the BAC Datamaster used to test each appellee.

---

1. Appellee Melms was also charged with failure to drive within marked lanes, in violation of R.C. 4511.33. Appellee Hurst was also charged with driving under suspension, in violation of R.C. 4507.02(D)(1), and appellee Jackson was also charged with failure to drive within marked lanes, in violation of city ordinance 331.08.

This appeal originated on the appellees' separate motions to suppress the results of their breath tests. The trial court consolidated the three cases for hearing and rendered judgment with respect to each by a written decision on July 17, 1998. In its judgment entry, the trial court determined that the breathalyzer's calibration solution from Batch No. 97220 was unreliable because of the methods employed by the solution's manufacturer during testing. The court concluded, therefore, that the results obtained from the tests should be suppressed. It is from this judgment that the state takes its appeal.

## I

The state raises one assignment of error. However, before we can address the merits of the assigned error, we must first address the appellees' argument[2] that the state has failed to invoke the jurisdiction of this court because of an "inadequate" certification by the prosecutor pursuant to Crim.R. 12(J).

Crim.R. 12(J) states:

"Appeal by state. When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that: (1) the appeal is not taken for the purpose of delay; and (2) the ruling on the motion or motions has rendered the state's proof with respect to *the pending charge* so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

"* * *

"If an appeal pursuant to this division results in an affirmance of the trial court, the state shall be barred from prosecuting the defendant for the same offense or offenses except upon a showing of newly discovered evidence that the state could not, with reasonable diligence, have discovered before filing of the notice of appeal." (Emphasis added.)

Here, the state has taken an appeal from an order "suppressing or excluding evidence" and makes the following certification:

"The undersigned hereby certifies that: 1. The appeal is not taken for the purpose of delay; and 2. The granting of the motion to suppress has rendered the State's proof with respect to *the charge* so weak in its entirety that any reasonable possibility of effective prosecution was destroyed." (Emphasis added.)

---

2. Appellee Jackson has not filed a brief on appeal. Therefore, when we refer to arguments raised by "the appellees" we are referring to those tendered by appellees Melms and Hurst.

Appellees are correct in noting that the state's certification here does not identify which of the multiple offenses charged to each appellee the state cannot proceed to prosecute. However, we do not agree that because the state did not specify which charge was adversely affected by the trial court's suppression of evidence, we are without jurisdiction to review this matter.

In support of their argument, the appellees rely on our recent decision in *State v. Biggs* (Oct. 8, 1998), Union App. No. 14–98–24, unreported, 1998 WL 719512. In *Biggs,* as here, the state filed an interlocutory appeal from an order suppressing evidence. We did not reach the merits of the appeal in *Biggs,* however, because the record contained no findings of fact required by Crim.R. 12(E). *Id.* Clearly, the specific disposition in *Biggs* lends no support to the appellees' contention that we lack jurisdiction to consider the present appeal because of an improper Crim.R. 12(J) certification by the prosecutor.

Nevertheless, appellees are correct when they note that there was some discussion in *Biggs* relating to the effect of the prosecutor's apparently broad Crim.R. 12(J) certification in that case. There the prosecutor certified to this court that the trial court's "granting of the motion suppressing evidence * * * rendered *the state's case* impossible to present *in its entirety* * * *." (Emphasis added.) *Id.* at 4. Our discussion of this issue was ancillary to our holding and ultimate disposition in that case. Nevertheless, we stated essentially that *if we had decided the appeal on the merits,* which we did not, an adverse judgment rendered for the state could preclude further prosecution of any charges in that case because of the broad certification. *Id.*

The circumstances here are readily distinguishable. First, the record here indicates that the trial court made the essential findings of fact on the record required by Crim.R. 12(E). Further, the state's certification here is not nearly as broad as the certification criticized in *Biggs.* The prosecutor here stated that "the motion to suppress has rendered the State's proof with respect to *the charge* so weak in its entirety that any reasonable possibility of effective prosecution was destroyed." (Emphasis added.) This statement, though not as precise as it could be, is not the same as stating that one's entire "case is impossible to present." *Biggs* at 4.

Finally, our discussion in *Biggs* notwithstanding, an overly broad certification does not necessarily divest an appellate court of its jurisdiction to review a matter presented pursuant to Crim.R. 12(J) and App.R. 4(B)(4). A prosecutor's appeal pursuant to Crim.R. 12(J) and App.R. 4(B)(4) is an appeal as a matter of right. R.C. 2945.67(A). Further, the Ohio Supreme Court has noted that an appellate court may not dismiss an appeal for lack of jurisdiction where it finds insufficient the "merits" of a prosecutor's contention that "any reasonable possibility of

effective prosecution has been destroyed" by a trial court's suppression of evidence. *State v. Bertram* (1997), 80 Ohio St.3d 281, 285, 685 N.E.2d 1239, 1241.

Here, the state's certification, at a minimum, states that the prosecution of one charge relating to each appellee is effectively destroyed by the trial court's suppression of evidence. This meets the procedural requirements of Crim.R. 12(J). *State v. Leary* (1975), 47 Ohio App.2d 1, 4, 1 O.O.3d 152, 154, 351 N.E.2d 793, 796 (noting, with respect to a former version of Crim.R. 12[J], that "the prosecutor's certificate * * * is purely a procedural requirement"); see, also, *State v. Buckingham* (1980), 62 Ohio St.2d 14, 16 O.O.3d 8, 402 N.E.2d 536. Further, any inquiry into *which charge* the state meant to identify in its certification would require this court to assess the "merits" of the state's case from a limited record. Such an inquiry is clearly outside our appellate jurisdiction. *Bertram, supra.* Therefore, because the state's certification meets the minimum procedural requirements under Crim.R. 12(J), the appellees' argument that this appeal should be dismissed for lack of jurisdiction is without merit.

## II

The state's assignment of error claims:

■ "The trial court erred in finding that the approval of the relevant calibration solution was so flawed that it was ineffective to demonstrate substantial compliance with Ohio Administrative Code 3701–53–04."

■ The "director of health shall determine or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol * * * in the person's blood, urine, breath or other bodily substance." R.C. 3701.143. This statutory provision "clearly vests all authority relative to determining the techniques and methods of chemically analyzing the alcohol content in a person's blood, urine and breath for purposes of R.C. 4511.19, in the director of health." *State v. Miller* (Dec. 15, 1998), Marion App. No. 9–98–42, unreported, at 6, 1998 WL 876812.

The machine used here, a BAC Datamaster, is an approved breath-testing instrument. Ohio Adm.Code 3701–53–02(A)(4). The Ohio Administrative Code requires that breathalyzer machines such as the BAC Datamaster be calibrated "no less frequently than once every seven days in accordance with the appropriate instrument checklist * * *." Ohio Adm.Code 3701–53–04(A). One step in the calibration process requires the senior operator of the breathalyzer machine to check the instrument by "using an instrument check solution containing ethyl alcohol *approved by the director of health.*" (Emphasis added.) Ohio Adm.Code 3701–53–04(A)(1). The Director of Health approves each batch of instrument

check solution by issuing a certificate of approval. An average batch of instrument check solution contains eighteen hundred bottles of solution, which are distributed to law enforcement agencies throughout the state.

Here, the trial court suppressed the appellees' breathalyzer test results because it determined that the instrument check solution contained in Batch. 97220 was "inherently unreliable." At the hearing on this matter, the state called as its only witness Dr. Craig Sutheimer, the Deputy Director of the Ohio Department of Health ("ODH") and Chief Toxicologist and Chief of the Alcohol Testing Program for that department. Sutheimer testified that the solution batch at issue was certified by the ODH director on September 30, 1997. Sutheimer stated further that in November 1997 he learned that Steifel Laboratories of Albany, New York, the manufacturer of the solution contained in Batch No. 97220, produced that solution without testing a sufficient number of bottles.[3] Sutheimer stated that he then collected ten additional bottles from Batch No. 97220 and sent them to the Steifel lab for testing.

Thereafter, Sutheimer visited the Steifel lab in December 1997 and reviewed Steifel's testing methodology and data. After conducting his review, Sutheimer stated that the certification issued in September 1997 was valid and appropriate and therefore did not recommend to the Director of Health that he rescind the certificate for Batch 97220.

Appellees, cited for DWI offenses committed in January and February 1998, filed motions to suppress the results of their breathalyzer test results. Appellees claimed that because the BAC Datamaster machine used to test them was calibrated with bottles of an unreliable batch of ethyl alcohol solution, specifically Batch No. 97220 from the Steifel lab, their test results were likewise unreliable and should be suppressed. The trial court suppressed the test results here without the benefit of our recent decision in *State v. Miller* (Dec. 15, 1998), Marion App. No. 9–98–42, unreported.

In *Miller*, the appellant claimed that the trial court erred when it refused to suppress the results of her breathalyzer test because an ethyl alcohol solution from *Batch No. 97220* that was used to calibrate the breathalyzer machine there was not properly tested by its manufacture, Steifel Laboratories. There, as here, the defendant called as an expert witness, Dr. Staubus. Staubus testified in that case that the methodology employed by the ODH to certify the solution in Batch No. 97220 was not scientifically reliable. *Id.* However, the state's witness, Dr.

---

3. Steifel tested three of the 1,800 bottles produced in Batch No. 97220. Dr. Sutheimer also stated that ODH tested four additional bottles from Batch No. 97220 as part of their standard quality assurance check.

Sutheimer, testified that the certificate approving Batch No. 97220 was valid based on the subsequent testing of that batch. *Id.*

Here, appellees' expert, Dr. Staubus, testified again that the methodology employed by ODH when approving Batch No. 97220 was not scientifically reliable. However, the legislature has clearly vested the director of ODH with the discretion to determine how best to approve instrument check solutions. R.C. 3701.143. Further, Dr. Staubus agreed that under proper conditions and quality control checks, the method used by ODH to approve Batch No. 97220 could produce accurate results. For instance, Staubus stated that if the manufacture's testing data were made available for review, then the method endorsed by ODH when Steifel tested the solution here could be reliable.

Dr. Sutheimer testified that after Steifel had tested an additional ten bottles from Batch No. 97220 it made its "gas chromatographic data" available to him on December 16, 1997. That data and other information enabled Dr. Sutheimer to "reproduce the ability of their data * * * and actually utiliz[e] the same equations and generat[e] those numbers myself." Therefore, because the testing data was made available to Dr. Sutheimer for review, even according to the testimony of Dr. Staubus, ODH could properly rely on the testing results.

We held in *Miller* that the "breathalyzer test results gathered from a machine calibrated using a solution of ethyl alcohol from batch numbers 97010 or 97220, originally approved by the Director of Health pursuant to the exercise of his discretion, are reliable since it has *been confirmed through subsequent scientific testing that these batches contain the amount of ethyl alcohol previously certified by the Director of Health * * *.*" (Emphasis added.) *Id.* at 13.

Here, we likewise determine that because subsequent scientific testing by ODH confirmed the accuracy of the solution of ethyl alcohol contained in Batch No. 97220, continued approval of that batch by the Director of Health was within his discretion. Accordingly, the solution in Batch No. 97220 used to calibrate the breathalyzer machine here was reliable. Because the trial court had no basis upon which to find that the approval of Batch No. 97220 was improper, the trial court's decision to suppress the test results here was contrary to law. *Miller, supra.* The state's assignment of error therefore is sustained.

*Judgments reversed*
*and causes remanded.*

SHAW and WALTERS, JJ., concur.