OPINION
{¶ 1} The state of Ohio appeals a decision of the Mason Municipal Court granting the motion to suppress of defendant-appellee, David Stendahl, resulting from his arrest for driving while under the influence of alcohol ("DUI").
 {¶ 2} On September 22, 2004, Ohio State Trooper Jeffrey Staples pulled appellee over after observing appellee drive 55 m.p.h. in a 40 m.p.h. zone and run a red light at the intersection of U.S. 42 and Western Row Road. While speaking to appellee, the state trooper noticed that he had a very strong odor of alcohol and that his eyes were bloodshot and glassy. Appellee initially admitted he had consumed two drinks. He later told the state trooper he had consumed four or five beers. The state trooper then administered the Horizontal Gaze Nystagmus ("HGN") test. Because appellee had an inner ear problem, this was the only field sobriety test performed. Following the HGN test, appellee was arrested and transported to the Mason Police Station where he agreed to take a breath test on a BAC Datamaster instrument. The breath test indicated appellee had an alcohol content of .160 grams per 210 liters of breath. Appellee was charged with DUI in violation of R.C. 4511.19(A)(1) and operating a vehicle with a prohibited alcohol concentration in violation of R.C. 4511.19(A)(4). He was also charged with speeding and failure to wear a seat belt.
 {¶ 3} Appellee filed a very broad motion to suppress challenging, inter alia, the results of the breath test and the HGN test. The motion was so sweeping, it even challenged the results of other field sobriety tests even though they were never performed.[1] In his motion and at the suppression hearing, appellee challenged the prior calibration of the BAC Datamaster on the ground that the solution used was improper under the rules and regulations promulgated by the Ohio Department of Health. Appellee also argued that the HGN test was not conducted in compliance with the procedures established by the National Highway Traffic Safety Administration ("NHTSA") manual. The state presented as witnesses Trooper Staples (the arresting officer) and the senior BAC Datamaster machine operator who performed the prior calibration of the BAC Datamaster.
 {¶ 4} On March 7, 2005, following post-hearing written arguments filed by the parties, the trial court granted appellee's motion to suppress the results of the breath test and the HGN test. The trial court's judgment entry did not state the court's findings of fact, only its legal conclusions that the HGN test was not conducted in substantial compliance with the NHTSA manual and that the state "failed to establish substantial compliance with the Ohio Department of Health regulations regarding breath alcohol test procedures." The trial court did find, however, that probable cause existed to arrest appellee for DUI under R.C. 4511.19(A)(1).
 {¶ 5} On appeal, the state raises two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION TO SUPPRESS THE RESULTS OF THE BREATHALYZER TEST."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE TRIAL COURT ERRED BY GRANTING DEFENDANT/APPELLEE'S MOTION TO SUPPRESS THE RESULTS OF THE [HGN] TEST."
 {¶ 10} When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. Statev. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 11} In its first assignment of error, the state challenges the trial court's suppression of the results of the breath test. When a motion to suppress challenges whether the state has properly complied with the Ohio Administrative Code regulations governing breath tests, the burden is on the state to show substantial compliance with the regulations. State v. Plummer
(1986), 22 Ohio St.3d 292, 295. However, the burden to establish substantial compliance only extends to the level with which the defendant takes issue with the legality of the test. State v.Linz, Clinton App. No. CA2003-06-016, 2004-Ohio-2297, ¶ 8. Therefore, unless a motion raises a specific requirement of a regulation in detail, the state is only required to present general testimony that it substantially complied with the regulations. State v. Nicholson, Warren App. No. CA2003-10-106,2004-Ohio-6666, ¶ 11. Furthermore, unless a defendant, either through discovery or cross-examination at the suppression hearing, points to facts to support the allegations that specific regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remain general and slight. State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 29.
 {¶ 12} We note that appellee's motion to suppress was very broad and sweeping, virtually challenging every aspect of the breath test. However, a close review of the record shows that at the hearing and in his post-hearing written argument, appellee only challenged the prior calibration of the BAC Datamaster on the ground that the solution used to calibrate the machine was used more than three months after its date of first use and after the manufacturer's expiration date in violation of Ohio Adm. Code3701-53-04(A). It appears the trial court suppressed the results of the breath test solely on that ground.
 {¶ 13} We note at the outset that appellee incorrectly cites Ohio Adm. Code 37015-3-04(A) as the administrative provision violated by the solution used in the case at bar. A review of the Ohio Administrative Code shows that the correct provision is, and has been since September 30, 2002, Ohio Adm. Code 3701-53-04(C) which states, in relevant part, that: "An instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first. After first use, instrument check solutions shall be kept under refrigeration when not being used."
 {¶ 14} Mason Police Officer John Cullen is the senior BAC Datamaster machine operator who performed the prior calibration of the BAC Datamaster. At the hearing, Officer Cullen testified that the police station received at least two orders of Batch No. 3190, each batch containing two bottles of instrument check solution. The first order of Batch No. 3190 contained bottle Nos. 158 and 175, and the second order of Batch No. 3190 contained bottle Nos. 467 and 471. The officer testified that the manufacturer's expiration date was December 1, 2004. The officer further testified he calibrated the BAC Datamaster on September 19, 2004 (three days before appellee's breath test), using bottle No. 471. That bottle was first used on August 22, 2004. The officer also testified that bottle No. 158 was first used on April 29, 2004, and was used before the other three bottles (including bottle No. 471).
 {¶ 15} In his post-hearing written argument, appellee argued that the solution used to calibrate the BAC Datamaster three days before appellee's breath test violated Ohio Adm. Code3701-53-04(C) because it was used more than three months after April 29, 2004, the date of first use. In other words, appellee argued that since a solution from Batch No. 3190 was first used on April 29, 2004, any solution from that batch could not be used more than three months after April 29. The crux of appellee's argument is that the phrase "instrument check solution" refers not to a bottle of solution in a batch, but rather to the entire batch itself. As a result, appellee argues, Ohio Adm. Code3701-53-04(C) requires the state to use an entire batch within three months of the date of first use of the first bottle in that batch. As noted earlier, it appears the trial court suppressed the results of the breath test based on this particular argument.
 {¶ 16} Upon reviewing Ohio Adm. Code 3701-53-04(C), we reject the argument advanced by appellee and accepted by the trial court. Although Ohio Adm. Code 3701-530-4 may be inartfully drafted, we do not read the phrase "instrument check solution" as referring to an entire batch of calibration solution. Rather, we find that the phrase specifically refers to each bottle of solution within a batch. We believe our position is supported by Ohio Adm. Code 3701-53-04(A)(2) (instrument check result outside the range shall be confirmed by senior operator using anotherbottle of approved instrument check solution), and by Ohio Adm. Code 3701-53-04(C) (after first use, instrument checksolutions shall be kept under refrigeration when not being used). (Emphasis added.)
 {¶ 17} We also find that there is no requirement in Ohio Adm. Code 3701-53-04 that once a bottle of solution within a batch is first used, all bottles in that same batch must be used within three months of the date of first use of that first bottle. Had the Ohio Department of Health intended to impose such a requirement, it could easily have done so. Ohio Adm. Code3701-53-04(C) clearly states that a solution cannot be used more than three months after its date of first use or more than oneyear after manufacture, whichever comes first. Were we to follow appellee's argument, a law enforcement agency would be required to discard any unused bottles of solution in a batch simply because a bottle of solution within that batch was first used by the agency three months earlier. We seriously doubt that is what the Ohio Department of Health intended. We also note that the "Director of Health approves each batch of instrument check solution by issuing a certificate of approval. An average batch of instrument check solution contains [1800] bottles of solution, which are distributed to law enforcement agencies throughout the state." State v. Melms (1999), 131 Ohio App.3d 246, 250-251. Again, were we to follow appellee's argument, that would mean that once a bottle of solution from a particular batch was first used anywhere in the state, all of the remaining 1799 or so bottles from that specific batch would have to be used or discarded within three months, regardless of when and where the other 1799 bottles of solution were first used by other law enforcement agencies.
 {¶ 18} We therefore reiterate that the phrase "instrument check solution" as used in Ohio Adm. Code 3701-53-04 specifically refers to each bottle of solution within a batch, and not to the batch as a whole. We further hold that the requirement under Ohio Adm. Code 3701-53-04(C) that a bottle of solution in a batch be used within three months after its date of first use solely applies to that particular bottle from the day it was first opened, and not to the entire batch containing other bottles of solution.
 {¶ 19} In the case at bar, Officer Cullen testified that bottle No. 471 was first used on August 22, 2004. Bottle No. 471 was then used to calibrate the BAC Datamaster on September 19, 2004, three days before appellee's breath test. The solution used to calibrate the machine was therefore clearly used within three months of its date of first use in substantial compliance with Ohio Adm. Code 3701-53-04(C). Thus, we find that the state met its burden regarding the one specific issue raised by appellee. SeeEmbry, 2004-Ohio-6324. The other general allegations in the motion with respect to the breath test were sufficiently addressed by Officer Cullen's testimony, the exhibits offered into evidence by the state, and the parties' stipulations.
 {¶ 20} We therefore find that the trial court erred by suppressing the results of the breath test. The state's first assignment of error is well-taken and sustained.
 {¶ 21} In its second assignment of error, the state challenges the trial court's suppression of the results of the HGN test and its finding the test was not conducted in substantial compliance with NHTSA standards.
 {¶ 22} In his motion to suppress, appellee argued that when conducting the HGN test, Officer Staples failed to give proper instructions, generally failed to substantially comply with NHTSA standards, and "moved the stimulus in a manner that did not substantially comply with" NHTSA standards. At the suppression hearing, the state was required to demonstrate by clear and convincing evidence that the HGN test was administered in substantial compliance with NHTSA standards. See R.C.4511.19(D)(4)(b); State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, ¶ 9.
 {¶ 23} On direct examination at the hearing, Officer Staples testified that he had been trained at the Ohio State Patrol Academy and was certified to administer the HGN test, that he had been trained in the NHTSA guidelines, and that he followed NHTSA guidelines and standards when he administered the HGN test. The officer described the instructions he gave appellee before administering the HGN test. The officer then described how he checked both of appellee's eyes for equal tracking of the stimulus and equal pupil size. He also described how he twice checked each of appellee's eyes for smooth pursuit of the stimulus, distinct nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees. When checking for smooth pursuit, the officer observed two clues. Likewise, when checking for distinct nystagmus at maximum deviation, he observed two clues. The officer observed no clues when checking for onset of nystagmus prior to 45 degrees.
 {¶ 24} Comparing the officer's foregoing testimony with NHTSA standards, we find that the state established that the HGN test was conducted in substantial compliance with NHTSA standards.
 {¶ 25} On cross-examination, appellee sought to impeach the officer's testimony by playing the videotape of the HGN test recorded from a camera on the officer's cruiser. After the videotape was played, the officer admitted that he did not check appellee's eyes for equal tracking separately from the other checks and that he believed he could check for equal tracking at any time during the test. Asked whether "from watching the video * * * there were six passes made across [appellee's] left eye, four across his right side," the officer replied: "Should have been six per each." On redirect examination, the officer testified distinctly recalling checking both eyes the same number of times.
 {¶ 26} Upon closely reviewing the videotape, we find that the officer substantially complied with NHTSA standards when he administered the HGN test. The videotape shows that after giving instructions to appellee, the officer twice checked both of appellee's eyes for smooth pursuit and distinct nystagmus at maximum deviation, in substantial compliance with NHTSA standards. It appears the officer checked both eyes for onset of nystagmus prior to 45 degrees only once, instead of twice as required in the NHTSA manual. However, at the hearing, appellee's attorney declined to question the officer about it as the officer had not observed any clues. The officer did admit he failed to check appellee's eyes for equal tracking. Nonetheless, we find, despite the omission of checking appellee's eyes for equal tracking, that the HGN test was administered in substantial compliance with NHTSA standards. See Nicholson, Warren App. No. CA2003-10-106, 2004-Ohio-6666.
 {¶ 27} We therefore find that the trial court erred by suppressing the results of the HGN test. The state's second assignment of error is well-taken and sustained.
 {¶ 28} Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
Powell, P.J., and Walsh, J., concur.
[1] We note that the trial court failed to address the breadth and/or shotgun approach of appellee's motion to suppress. Because the trial court did not address it, we will not address it either. That, however, does not mean we condone shotgun type motions to suppress. Indeed, we find it incredible that appellee and his attorney challenged field sobriety tests that were never performed.