OPINION
{¶ 1} The instant appeal has been taken from a final judgment of the Portage County Municipal Court, Ravenna Division. Appellant, Eric D. Almonte, seeks the reversal of his conviction on one charge of driving while under the influence of alcohol, pursuant to R.C. 4511.19(A)(1). As the primary grounds for his appeal, appellant has challenged both the admissibility and sufficiency of certain evidence which formed the basis of his conviction.
 {¶ 2} The underlying charges against appellant stemmed from a series of events which began on the evening of October 16, 2004. Earlier that day, appellant had decided to spend the evening with Jeff Martin, an old friend who would soon be leaving the country for military service. After initially playing pool together for approximately one hour, the two men agreed to have dinner at a local restaurant in Akron, Ohio. Upon completing their meal, the two men decided to again shoot pool for nearly three hours at the Akron restaurant. During the period in which they ate and played pool, appellant had at least two servings of beer.
 {¶ 3} At approximately 10:00 p.m., appellant and Martin agreed to leave the restaurant and drive to a bar in Kent, Ohio. During the two and one-half hours they stayed at this establishment, appellant again drank at least two beers. At 1:00 a.m., the two men then walked to a local pizza parlor, where they again ate together and continued talking for ninety minutes. At the end of their stay at the parlor, they returned to their vehicle and decided to drive back to Akron. At that time, appellant was operating the motor vehicle in which the two men were riding.
 {¶ 4} As appellant was driving south on State Route 43 in Brimfield Township, Ohio, his vehicle was spotted by Trooper Jeffrey Green of the State Highway Patrol. At that moment, Trooper Green was proceeding north on the same road in a white patrol car. As the two vehicles were about to pass, Trooper Green observed appellant's vehicle veer slightly to the left to the extent that the two left-side tires of that vehicle drove over the yellow center line on the road. In light of this observation, once the two vehicles had passed each other, Trooper Green immediately turned around and began to follow appellant. After approximately ninety seconds, Trooper Green again saw appellant's vehicle swerve to the left and cross over the center line. According to Trooper Green, appellant's left-side tires went one to two feet to the left of the center line before the vehicle veered back into the proper lane.
 {¶ 5} Upon observing the second "lane" violation, Trooper Green initiated a traffic stop of appellant's vehicle. The various events which occurred during this stop were taped on a video recording system which was contained in the patrol car. The video recording began when Trooper Green switched on his vehicle's overhead lights at the outset of the stop, and continued until appellant was ultimately placed under arrest. In addition to a camera which was located inside the patrol car, the recording system also consisted of at least two microphones which were able to record conversations occurring inside and outside the patrol car.
 {¶ 6} Once the two vehicles had pulled off the edge of the road and stopped, Trooper Green approached appellant's vehicle and had an initial conversation with him. At that time, Trooper Green noticed a strong odor of alcohol emanating from the inside of the vehicle. He further noticed that appellant's eyes were red and glassy. When Trooper Green then asked appellant if he had had any alcohol to drink that evening, appellant responded that he had only had "a couple" of beers over a seven-hour period. Based upon this, Trooper Green instructed appellant to leave his vehicle so that he could be questioned further on the matter.
 {¶ 7} After placing appellant in the patrol car, Trooper Green noted that he could still detect a strong odor of alcohol about appellant. As part of their conversation inside the patrol car, Trooper Green asked appellant to voluntarily take a pre-arrest breath test. When appellant refused to do so, he then requested appellant to exit the patrol car for the purpose of performing certain field sobriety tests. These procedures included the "horizontal gaze nystagmus" test, the "one-leg standing" test, and the "heel-to-toe walking" test. In light of appellant's performance on the three tests, Trooper Green determined that he had been driving while under the influence of alcohol, and therefore placed him under arrest at that time.
 {¶ 8} Upon being transported to the local State Highway Patrol post, appellant again refused to submit to a breathalyzer test. As a result, appellant was never charged with operating a motor vehicle with a breath-alcohol concentration greater than .01, under R.C. 4511.19(A)(3). Instead, he was only cited for the "lane" violation and drunk driving under R.C. 45511.19(A)(1).
 {¶ 9} At the outset of the criminal proceeding, appellant attempted to represent himself pro se. Twice during the initial stages of the case, he moved the trial court to continue the matter on the basis that his trial should not go forward until Jeff Martin, the friend who had been a passenger in the vehicle on the night of the incident, could return from his military service. Although both continuances were granted, Martin never testified at the subsequent trial.
 {¶ 10} After the case had been pending for seven months, a county public defender was appointed to represent appellant in the matter. Upon conducting a basic review of the case, appellant's new counsel immediately moved the trial court to suppress various evidence which had been obtained during the traffic stop. As one basis for the motion, appellant argued that probable cause had not existed to support his arrest at the end of the stop. In addition, he contended that the results of two of the field sobriety tests should be excluded from evidence because they had not been performed in accordance with the state requirements for such tests. Specifically, he asserted that the "one-leg standing" test and the "heel-to-toe walking" test had not taken place on a level surface.
 {¶ 11} The sole witness to testify at the suppression hearing was Trooper Green. The video cassette recording of the traffic stop was not played for the trial court as part of this proceeding. In regard to the field sobriety tests, Trooper Green stated that, even though the tests were performed at a point on the road which was slightly slanted, the grade of this slope was not sufficient to have affected appellant's ability to complete the tests. In light of this testimony, the trial court overruled the motion to suppress, holding that all evidence obtained during the stop would be admissible at trial.
 {¶ 12} A one-day jury trial was conducted on the matter in November 2005. As had occurred in the suppression hearing, the state's case consisted solely of the testimony of Trooper Green. However, as part of his testimony during this second proceeding, the state also submitted into evidence the video cassette recording of the entire stop of appellant's vehicle. The cassette was then played before the jury for its consideration.
 {¶ 13} During the course of his testimony, Trooper Green stated that appellant had failed all three field sobriety tests which had been performed on the evening in question. In relation to the "heel-to-toe walking" test, the officer testified that appellant had made at least three errors in attempting to complete this test; i.e., on at least three occasions, he had been unable to touch the toes of his back foot with the heel of his lead foot in taking a step. On cross-examination, appellant's trial counsel noted that, in completing his report on the incident, Trooper Green had indicated that appellant had committed only one error on this particular test. In response, the officer stated that, in reviewing the video cassette recording again prior to trial, he had noticed additional mistakes by appellant.
 {¶ 14} Following the conclusion of the state's case at trial, appellant testified in his own behalf. As part of this testimony, appellant stated that: (1) he had had only four beers during the entire evening, and had not been intoxicated at the time of the stop; (2) even though he believed that he had completed the field sobriety tests adequately, he still had experienced some difficulty in performing the tests because it had been windy and cold that evening; (3) he had also experienced difficulty in understanding the general requirements of the tests because Trooper Green had talked too quickly; (4) Trooper Green had become irritated when Jeff Martin, the passenger in his vehicle, had tried to leave the scene; (5) in transporting him to the patrol post, Trooper Green had driven over eighty miles per hour; and (6) while at the post, Trooper Green had stated that he was very tired because he had worked twenty-two hours of a thirty-four hour span.
 {¶ 15} After considering the submissions of both sides, the jury returned a guilty verdict as to the charge of driving while under the influence of alcohol. The trial court entered a separate guilty verdict on the charge of driving left of center. In light of these verdicts, the trial court then issued a sentencing judgment in which it fined appellant the sum of $150 for driving left of center. Regarding the "drunk driving" charge, the court fined him $1,000, sentenced him to one hundred eighty days in the county jail, and suspended his license to drive for a period of six months.
 {¶ 16} In now appealing his conviction, appellant has assigned the following as error:
 {¶ 17} "1. The trial court erred in overruling defense counsel's Rule 29 motion. There was not sufficient evidence to convict the defendant-appellant of any of the charges at trial.
 {¶ 18} "2. The trial court erred in allowing a conviction that was against the manifest weight of the evidence.
 {¶ 19} "3. The trial court erred in denying appellant's motion to suppress the evidence."
 {¶ 20} At both the close of the state's evidence and the conclusion of the entire trial as a whole, appellant moved the trial court for a judgment of acquittal under Crim.R. 29(A). In overruling both motions, the trial court concluded that, when the testimony concerning the field sobriety tests was considered along with the other evidence obtained during the traffic stop, there had been sufficient evidence to warrant the submission of the "drunk driving" charge to the jury. Under his first assignment, appellant contends that his motion for acquittal should have been granted because the state's evidence was insufficient to establish that he had been driving while under the influence. In essence, he submits that the evidence was such that no reasonable person could have found that he had failed each of the field sobriety tests.
 {¶ 21} For example, in relation to the "heel-to-toe walking" test, appellant emphasizes that he testified at trial that it had been windy and cold when he performed that test, and that the test had taken place on a surface which was slightly sloped. Appellant also notes that he testified that, due to the rate of Trooper Green's speech, he had had some difficulty in understanding the instructions for the test. Based upon this, he now asserts that a reasonable person could have only found that his inability to perform the test was due solely to the conditions of the road and the weather.
 {¶ 22} In relation to the conditions under which the "heel-to-toe walking" test was performed, this court would first note that Trooper Green expressly testified that all of the field sobriety tests were performed on a "level" asphalt surface. As to this point, we would further note that, as part of our consideration of the record before us, we have had the opportunity to review the video cassette recording of the stop which was played for the jury during the officer's testimony at trial. This review indicates that, to the extent that the conditions of the road can be seen during the recording, there is nothing which contradicts Trooper Green's description. That is, there is no indication in the recording that, even if the road was slightly sloped at the point the "heel-to-toe walking" test was performed, the inclination had no effect on appellant's ability to complete the test. Moreover, the recording shows that appellant never complained about the slope of the road.
 {¶ 23} As to appellant's assertion concerning the effect of the wind, our review of the video cassette recording verifies that a steady wind was blowing throughout the entire traffic stop. However, our review also shows that the force of the wind was not such that it affected Trooper Green's ability to walk between the two vehicles and demonstrate to appellant how to perform the test. In light of this, the jury could have found that appellant's failure to properly perform the "heel-to-toe walking" test was not due to the wind. In addition, the recording again indicates that appellant never complained that the wind was affecting his ability to do the test properly.
 {¶ 24} In relation to appellant's assertion that he could not understand the basic instructions for the test, a review of Trooper Green's trial testimony indicates that he gave a full description of the instructions he usually provides to the detainee prior to the performance of the test. In turn, the video cassette recording readily indicates that the actual instruction Trooper Green gave to appellant concerning the "heal-to-toe walking" test was essentially consistent with his general description. More importantly, the recording further shows that Trooper Green's instructions were easily understandable, and were not stated at a pace which would confuse a person who was not intoxicated. Furthermore, we would emphasize that Trooper Green was willing to repeat certain aspects of the instructions when appellant asked him to do so.
 {¶ 25} Finally, as to the results of the "heal-to-toe walking" test, Trooper Green specifically testified that he concluded that appellant had failed this test because: (1) appellant was unable to follow the instructions; (2) he had to raise his arms in order to keep his balance; and (3) on at least three occasions, he was unable to properly place the heel of his lead foot directly in front of the toes of his back foot. Although the placement of the video camera was such that each step taken by appellant during the test cannot be seen, the recording still confirms that appellant had difficulty placing one foot directly in front of the other, and that he swayed at one point.
 {¶ 26} Taken as a whole, the evidence of the state at trial was legally sufficient to show that the "heel-to-toe walking" test had been administered in a proper manner, and that appellant's inability to properly perform the test was not due to the general conditions or the manner in which Trooper Green gave the instructions. As a result, appellant's trial testimony as to the conditions and the instructions merely created a factual conflict on those issues. If the jury did not find appellant's version to be credible, it could have then inferred that his inability to perform the test was due to the fact that he had been under the influence of alcohol at that time.
 {¶ 27} The foregoing basic analysis is also applicable to the two remaining field sobriety tests. That is, as part of his trial testimony, Trooper Green expressly stated that: (1) the "horizontal gaze nystagmus" test and the "one-leg standing" test had been performed under the proper conditions; (2) appellant was given instructions on both tests which were consistent with the basic instructions the officer usually gives; and (3) appellant failed to properly perform both tests. In turn, the majority of the officer's testimony was confirmed by the video cassette recording of the traffic stop. In addition, even as to those aspects of the officer's testimony which were not confirmed in the recording, our review of the recording establishes that it did not contain any evidence which contradicted the officer.[1] Therefore, the state clearly submitted some evidence that appellant had failed three properly-administered field sobriety tests.
 {¶ 28} As a general proposition, a "sufficiency" argument raises a question of law as to whether the prosecution was able to present some evidence concerning each element of the charged offense. State v.Driesbaugh, 11th Dist. No. 2002-P-0017, 2003-Ohio-3866. In considering such arguments in the context of a criminal appeal, an appellate court must determine "* * * whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 29} Regarding the offense of drunk driving under R.C.4511.19(A)(1), this court has previously stated that this crime has three basic elements: (1) the defendant had been operating a motor vehicle; (2) in the state of Ohio; and (3) while under the influence of alcohol. State v. Scott, 11th Dist. No. 2001-L-086, 2002-Ohio-6692. In relation to the third element, we have indicated that a finding of impaired driving can be predicated on a combination of erratic driving, the defendant's physical appearance, and the failure to properly perform the field sobriety tests. State v. Lower (June 19, 1998), 11th Dist. No. 97-P-0084, 1998 Ohio App. LEXIS 2753.
 {¶ 30} In applying the foregoing general principles, this court has held that the following facts are legally sufficient to establish the third element: "* * * [the defendant] was driving with unlit headlights; she smelled of alcohol; her eyes were glassy and bloodshot; her speech was slurred; she admitted to having had a couple of drinks; she staggered and swayed as she walked; she failed the HGN test; and she refused to take any further field sobriety tests or a breath-alcohol test." City of Willoughby v. Wutchiett, 11th Dist. No. 2002-L-165,2004-Ohio-1177, at ¶ 9. Similarly, in Scott, 2002-Ohio-6692, we rejected a challenge to the sufficiency of the state's evidence when the trial transcript showed: the defendant was unable to drive within marked lanes; he smelled of alcohol; his eyes were glassy and bloodshot; his speech was slurred; he failed three field sobriety tests; he admitted to drinking; and he fell while being held in jail.
 {¶ 31} Although the state's evidence in the instant case is not identical to the evidence in Wutchiett and Scott, the quantity of that evidence was still such that a rational trier of fact could find beyond a reasonable doubt that appellant had been driving while under the influence. Specifically, the state's evidence established that: (1) appellant admitted that he had been drinking; (2) he had engaged in erratic driving by twice driving left of center; (3) there was a strong odor of alcohol about appellant; (4) his eyes were glassy and red; (5) he was unable to follow the officer's instructions in performing the field sobriety tests; (6) he failed all three sobriety tests administered; and (7) he refused to submit to any breath test.
 {¶ 32} As the trial court did not err in overruling the motion for a judgment of acquittal, appellant's first assignment of error lacks merit.
 {¶ 33} Under his second assignment, appellant maintains that his conviction for driving while under the influence must be reversed because it was against the manifest weight of evidence. In support of this argument, appellant simply asserts that the jury should have rejected Trooper Green's entire testimony because his credibility was successfully attacked during cross-examination.
 {¶ 34} As was noted above, the trial transcript verifies that appellant's trial counsel was able to demonstrate during cross-examination that Trooper Green's testimony as to the results of appellant's performance of the "heel-to-toe walking" test was inconsistent with what the officer had written on the field report for the incident. However, after reviewing the entire substance of the officer's testimony, this court concludes that the jury could have found that the officer simply committed an inadvertent error in failing to note on the report that appellant failed to touch his heel to his toes on at least three occasions. As to this point, we would emphasize that the jury had an opportunity to witness appellant's actual performance of the test on the video cassette recording. Furthermore, our review of the officer's testimony does not reveal any other inconsistencies which would have rendered his version of the events unbelievable.
 {¶ 35} During his own testimony, appellant made a number of statements which directly conflicted with Trooper Green's testimony. For example, appellant indicated that he felt that he had performed the field sobriety tests reasonably well. However, the transcript of the trial further shows that, in questioning appellant about his version of the events as part of his cross-examination, the prosecutor asked appellant on a number of occasions whether he would like to verify his statements by replaying parts of the video cassette recording. In each instance, appellant declined to do so, stating that he believed it was not necessary to review the video. Given the evasiveness of appellant's answers, the jury could have concluded that appellant was not being truthful, and that the testimony of the officer was most credible.
 {¶ 36} In relation to a criminal "manifest weight" analysis, this court has recently stated:
 {¶ 37} "We may find that a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it.State v. Group, 2002 Ohio 7247, ¶ 76, 98 Ohio St.3d 248, * * *. When we consider a manifest weight argument we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. 2002 Ohio 7247, at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. * * *"Driesbaugh, 2003-Ohio-3866, at ¶ 53.
 {¶ 38} In conjunction with the foregoing standard for a "manifest weight" analysis, this court has also consistently noted that the determination of the credibility of a witness, along with the question of the weight to be given to the testimony, lies within the sound discretion of the trier of fact. See State v. Elersic, 11th Dist. No. 2000-L-145, 2002-Ohio-2945, at ¶ 30.
 {¶ 39} In the instant case, the jury verdict clearly turned upon the jury's assessment of the credibility of the two witnesses. Pursuant to the foregoing analysis, we cannot say that the jury abused its discretion in finding that the testimony of Trooper Green was most credible. Thus, since the trial transcript before us does not show that the jury lost its way in finding that appellant had been driving while under the influence, appellant's conviction was not against the manifest weight of the evidence. In light of this, it follows that appellant's second assignment also lacks merit.
 {¶ 40} Under his last assignment, appellant contends that the trial court erred in not granting his motion to suppress the various evidence which was obtained during the traffic stop. Specifically, he submits that the evidence before the trial court supported the conclusion that probable cause had not existed to warrant his arrest for alleged drunk driving. In support of this contention, appellant states that the evidence established that the results of two of the field sobriety tests were unreliable because the tests were not performed on a flat or level surface. He further states that, without the results of those two tests, Trooper Green could not properly conclude that probable cause existed.
 {¶ 41} As was noted above, Trooper Green was the only witness to testify at the suppression hearing. On direct examination, the prosecutor asked the officer to describe the surface where the field sobriety tests had taken place. In response, the officer stated: "It's a flat, very slight grade but to a position in which Mr. Almonte would have felt comfortable doing that." In addition, as part of his cross-examination, the officer stated that the slope of the surface was so slight that it would not have affected appellant's ability to perform the field sobriety tests.
 {¶ 42} Given that Trooper Green's testimony was uncontradicted and did not contain any inherent inconsistencies, this court concludes that the trial court did not err in finding his testimony to be credible. In turn, because the officer's testimony would be sufficient to establish that the three field sobriety tests were administered in a proper manner, the trial court could legitimately hold that the officer could consider the results of those tests in determining whether the arrest for drunk driving was appropriate. Thus, since the trial court did not err in concluding that the evidence stemming from the traffic stop was admissible into evidence, the denial of the motion to suppress was warranted. Under this analysis, appellant's third assignment of error is without merit.
 {¶ 43} Since each of the three assignments failed to establish any error in the underlying proceedings, the judgment of the trial court is affirmed.
DIANE V. GRENDELL, J., CYNTHIA WESTCOTT RICE, J., concur.
[1] The "horizontal gaze nystagmus" test was not performed in an area which could be recorded by the video camera in Trooper Green's cruiser. As a result, even though the actual instructions for this test can be verified, Trooper Green's testimony as to appellant's performance of this test cannot. Nevertheless, Trooper Green's testimony on the results of the test still constitutes some evidence on that point.