OPINION
{¶ 1} Defendant-appellant, Angel David Jimenez, appeals the decision of the Warren County Court denying his motion to suppress evidence obtained from breath and field sobriety tests in a driving under the influence of alcohol ("DUI") case. We affirm.
 {¶ 2} On November 19, 2004, Deputy Brian Dulle of the Warren County Sheriff's Office conducted a traffic stop of a vehicle driven by appellant after observing appellant drive *Page 2 
outside the marked lanes of travel while northbound on State Route 48 in Clearcreek Township. Upon approaching the vehicle on foot, the deputy detected an odor of alcohol about appellant. Appellant admitted he had consumed three glasses of wine.
 {¶ 3} The deputy then had appellant perform three roadside field sobriety tests: the heel-to-toe walk, the one-leg stand and horizontal gaze nystagmus ("HGN") tests. Appellant exhibited seven clues of intoxication during the heel-to-toe walk, two clues during the one-leg stand test, and three clues during the HGN test. The deputy then arrested appellant for DU I. The field sobriety tests and arrest were videotaped with a mobile recording unit mounted within the deputy's cruiser.
 {¶ 4} Dep. Dulle transported appellant to the Warren County jail, where he voluntarily submitted to a BAC Datamaster breath test administered by Lt. Tim Johnson. The test indicated there was .102 grams of alcohol per 210 liters of breath, above the legal limit of .08 grams. The state charged appellant with DUI in violation of R.C.4511.19(A)(4)[1] and with marked lanes in violation of R.C.4511.33(A).
 {¶ 5} Appellant, through counsel, filed a pretrial motion to suppress in the Warren County Court challenging, inter alia, evidence of the field sobriety tests and the breath test. Without this evidence, appellant argued there was insufficient probable cause to arrest and charge him with DUI.
 {¶ 6} At the hearing on appellant's motion, Dep. Dulle and Lt. Johnson were the only two witnesses to testify. The trial court suppressed the results of the HGN test, but overruled the remainder of appellant's motion.
 {¶ 7} Appellant subsequently pled no contest to DUI and to a marked lanes violation. The trial court found appellant guilty of both offenses and sentenced appellant accordingly. *Page 3 
 {¶ 8} Appellant appeals the trial court's decision to the extent it overruled his motion to suppress. Appellant first argues the trial court erred in finding probable cause for the arrest and raises the following in the form of an issue for review and argument:[2]
 {¶ 9} "THE COURT FAILED TO TAKE INTO CONSIDERATION ANY OF THE ADVERSE CONDITION (sic) UNDER WHICH THE DEFENDANT WAS REQUIRED TO TAKE THE VARIOUS FIELD SOBRIETY TESTS, THE POSITIVE EVIDENCE AND INFERENCES DEMONSTRATED DURING THE FIELD SOBRIETY TESTS, OR THE DEVIATIONS FROM REQUIRED PROCEDURE BY THE DEPUTY."
 {¶ 10} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence.State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. Then, the appellate court independently reviews without deference the trial court's legal conclusions based upon those facts and determines whether, as a matter of law, the facts meet the appropriate legal standard. Id.
 {¶ 11} Probable cause to arrest for DU I exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe the accused was driving under the influence of alcohol. State v. Homan, 89 Ohio St.3d 421, 427,2000-Ohio-212, State v. Thomas, Warren App. No. CA2004-01-010,2004-Ohio-4527, ¶ 15. The trial *Page 4 
court makes this determination based on the totality of the surrounding circumstances. Id.
 {¶ 12} In response to a motion to suppress regarding field sobriety tests in a DU I case, the state must show the requisite level of compliance with accepted testing standards. State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9. Typically, as in this case, the standards used are those from the National Highway Traffic Safety Administration ("NHTSA"). Strict compliance with these field sobriety test standards is no longer necessary; rather, clear and convincing evidence of substantial compliance is sufficient. R.C. 4511.19(D)(4)(b). See, also,Schmitt at ¶ 9.
 {¶ 13} Of the two officers testifying at the hearing on the motion to suppress, Dep. Dulle was the sole witness to testify about the events leading to appellant's arrest. Additionally, the state admitted into evidence the videotape of appellant's field sobriety tests.
 {¶ 14} Based upon the evidence presented, the trial court made its findings of fact. The trial court found the deputy observed appellant "riding both lanes of travel" on a two-lane highway and drive across the white fog line on the right. Upon executing a traffic stop, the deputy detected an odor of alcohol on or about appellant's person. Appellant's eyes appeared to be watery and glassy. Appellant told the deputy he had consumed three glasses of wine earlier that day. Dep. Dulle then had appellant perform the three field sobriety tests: the heel-to-toe walk, the one-leg stand, and the horizontal gaze nystagmus HGN test.
 {¶ 15} In its decision, the trial court suppressed the results of the HGN test, finding them unreliable because appellant was facing road traffic directly behind the officer, thereby distracting appellant's eyes as he tried to follow the movement of the pen in the officer's hand. The trial court found the deputy conducted the other two field sobriety tests in substantial compliance with applicable testing standards and thus did not suppress evidence of these tests or the results. Based upon this record, the trial court concluded as a matter of law that the totality of the surrounding circumstances established probable cause to arrest *Page 5 
appellant for DUI.
 {¶ 16} On appeal, appellant disputes some of the trial court's factual findings. Appellant argues the deputy actually testified that the odor of alcohol came from within appellant's vehicle, not necessarily from appellant directly. Our review of the record indicates the trial court's conclusion that the odor was on or about appellant's person is supported by competent, credible evidence. Appellant was the only occupant in the vehicle, and the deputy observed no alcoholic beverage containers within the vehicle.
 {¶ 17} Appellant also argues there was no testimony establishing when appellant consumed the three glasses of wine he admitted to the deputy. We find competent, credible evidence in the record supporting the trial court's conclusion that appellant consumed the alcohol earlier that day. The deputy detected the odor of alcohol at the time of the stop at 5:56 p.m. on a Friday evening. The videotape reveals appellant told the deputy that he consumed the wine at a farewell event for an attorney who was leaving employment at appellant's office.
 {¶ 18} Appellant next argues that the trial court ignored other evidence suggesting appellant was not intoxicated. This evidence consists of the absence of other indicia of impairment as listed in the NHTSA training manual.[3] However, the mere fact that some indicia of intoxication are absent is not dispositive if the totality of the surrounding circumstances establishes probable cause to arrest.Homan, 89 Ohio St.3d at 427.
 {¶ 19} Finally, appellant argues that the trial court failed to take into account the adverse impact of nearby passing traffic on the ability of appellant to perform the heel-to-toe walk and one-leg stand tests. After carefully reviewing the videotape showing the field *Page 6 
sobriety tests and passing traffic, we find the heel-to-toe walk and one-leg stand tests were performed in substantial compliance with NHTSA standards. We do not find the surrounding conditions, including passing traffic, excessively impaired appellant's ability to perform the tests. See State v. Marcinko, Washington App. No. 06CA51, 2007-Ohio-1166
at ¶ 17 (field sobriety tests conducted in less than ideal conditions do not necessarily establish a lack of substantial compliance with NHTSA regulations), State v. Almonte, Portage App. No. 2005-P-0093,2006-Ohio-6688 at ¶ 22-23 (cold and windy weather did not require suppression of field sobriety tests).
 {¶ 20} Having determined that the trial court's factual conclusions are supported by competent, credible evidence, we now independently examine whether these facts constitute probable cause to arrest for DUI. The facts include appellant's failure to drive within the marked lanes of travel, an odor of alcohol, watery and glassy eyes, indications of intoxication on the heel-to-toe and one-leg stand field sobriety tests, and an admission to drinking three glasses of wine. We find these facts amply constitute probable cause to arrest for DUI. See State v.Lamb, Union App. No. 14-03-030, 2003-Ohio-6997, ¶ 14; State v.Whitaker, Clark App. No. 2002-CA-82, 2003-Ohio-3398, ¶ 14-17. Thus, the trial court did not err in so finding.
 {¶ 21} Next, appellant argues the trial court should have suppressed the results of the breath test administered at the Warren County jail. In support, appellant raises the following in the form of an issue presented for review and argument:
 {¶ 22} "THE TRIAL COURT PERMITTED THE ADMISSION OF THE DATA MASTER RESULT WHEN THE PROSECUTION FAILED TO SHOW COMPLIANCE WITH THE DEPARTMENT OF HEALTH REGULATIONS."
 {¶ 23} R.C. 4511.19(D)(1) permits a court to admit evidence of the concentration of alcohol in a defendant's breath at the time of an alleged DUI violation as shown by chemical analysis of the bodily substance, but further requires that the substance shall be analyzed in *Page 7 
accordance with regulations approved by the Director of Health. These regulations are described in Chapter 3701-53 of the Ohio Administrative Code.
 {¶ 24} When an accused challenges the validity of an alcohol test, the state has the burden to show the test was administered in substantial compliance with the Department of Health regulations. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 24. Although strict compliance with the regulations is not required, the Ohio Supreme Court has limited the substantial compliance standard to excusing "only errors that are clearly de minimis." State v. May, 106 Ohio St.3d 207,2005-Ohio-4629, ¶ 49. De minimis errors are characterized as "minor procedural deviations." Id.
 {¶ 25} Separate from the compliance standard issue addressed inBurnside and Mayl is the issue of the specificity of evidence required. Crim.R. 47 requires a motion to "state with particularity the grounds upon which it is made." See, also, State v. Shindler, 70 Ohio St.3d 54,56, 1994-Ohio-452. Therefore, the state's burden to demonstrate compliance with the health regulations extends only to the extent with which the defendant takes issue with the legality of the breath test.State v. Johnson (2000), 137 Ohio App.3d 847, 851. When the language in the motion to suppress raises only general claims, even though accompanied by specific administrative code subsections, then there is only a slight burden on the state to show, in general terms, compliance with the health regulations. Id.
 {¶ 26} In this instance, appellant argues the state presented no evidence at the hearing on the motion to suppress demonstrating (1) the location of the manufacturer's manual as required by Ohio Adm. Code3701-53-01(B), and (2) retention of records of maintenance and repairs for not less than three years as required by Ohio Adm. Code3701-53-01(A).
 {¶ 27} As it relates to the breath test, appellant's motion to suppress is a laundry list of at least a dozen alleged violations of the Department of Health regulations, most of which *Page 8 
appear in a single lengthy paragraph.[4] Appellant merely uses the language of the various administrative code subsections, sometimes accompanied with the specific subsection number, and alleges noncompliance. Appellant includes no supporting factual basis specific to this case.
 {¶ 28} In these respects, appellant's motion to suppress language is similar to that in State v. Nicholson, Warren CA2003-10-106,2004-Ohio-6666. In that case, we concluded the motion to suppress presented merely "a general challenge to whether 1) the machine was functioning properly and 2) the instrument check was done on a weekly basis." Nicholson at ¶ 12, citing State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324. We have further found a verbatim response to each and every separate facet of such a motion is not required.Embry at ¶ 22-23, 29. Thus, appellant's motion initially placed only a slight burden on state to generally establish compliance with the health regulations. Nicholson at ¶ 12. See, also, State v. Stoner, Ottawa App. No. OT-05-042, 2006-Ohio-2122.
 {¶ 29} At the hearing on appellant's motion to suppress, Lt. Tim Johnson of the Warren County Sheriff's Office was the sole witness to testify about compliance of the BAC Datamaster test procedures with the department of health regulations. As a certified senior operator, Lt. Johnson was responsible for administering the breath tests, as well as the maintenance and calibration of the machine. Lt Johnson described following the BAC Datamaster operational checklist prior to administering appellant's breath test. This included observation of appellant for at least twenty minutes before the test. The state admitted into evidence the checklist sheet itself, showing successful completion of all steps.
 {¶ 30} Lt. Johnson also testified about the procedures used to calibrate the machine *Page 9 
and test for radio frequency interference (RFI). Calibration was performed at least once every seven days. Relating to appellant's November 19, 2004 breath test, the machine was calibrated on November 14 and again on November 20.
 {¶ 31} Lt Johnson further explained that the machine was calibrated with a solution batch approved by the Department of Health. This solution is manufactured so as to cause the machine to register a calibration reading of .100 grams of alcohol per 210 liters, ± .005 grams. The solution was first used less than three months before appellant's breath test and was kept refrigerated when not in use. Using this solution batch, the BAC Datamaster machine passed the November 14 and 20 calibration tests.
 {¶ 32} Lt. Johnson's testimony culminated in the following exchange:
 {¶ 33} "Prosecutor: Based on your review of the exhibits and the questions I've posed to you, do you have any reason to question whether the Datamaster was in good working order on the date the test was given to Mr. Jimenez?
 {¶ 34} "Lt. Johnson: Can I allow one moment, please?
 {¶ 35} "Prosecutor: From November 13th through November 20th, that time period.
 {¶ 36} "Lt. Johnson: Based on my knowledge and everything that I have here, it appears that the machine was fully operational during this entire time period and was never taken out of service."
 {¶ 37} Based on the particular record of this case, including the language of appellant's motion to suppress along with the testimony and exhibits at the hearing on the motion to suppress, we find the state met its initial slight burden to respond to the general challenge raised in appellant's motion to suppress. See State v. Crotty, Warren CA2004-05-051, 2005-Ohio-2923. The testimony and exhibits establish generally that the BAC Datamaster machine was functioning properly and that calibration checks were done on a weekly basis, both before and after appellant's test. Nicholson at ¶ 12. *Page 10 
 {¶ 38} With the state's initial burden met, the burden then shifted to appellant in cross-examination to raise a more specific challenge.Embry at ¶ 29. This, in turn, would have required a more specific response from the state. Crotty at ¶ 27. However, in this instance the appellant did not conduct any cross-examination of Lt. Johnson.
 {¶ 39} We further note appellant did not request oral closing argument as an opportunity to raise the issue of a statutory deficiency in the state's evidence.[5] This would have allowed the trial court the option, in its discretion, to reopen the state's case while the witnesses were still present to determine whether the state could prove compliance with specifically identified health regulations. See, generally, State v. Steele, Butler CA2003-11-276, 2005-Ohio-943, ¶ 137, construing Evid.R. 611 and R.C. 2945.10.
 {¶ 40} Finally, we again observe that perhaps the best method for obtaining a specific factual basis to form specific challenges to a DU I breath test is for the accused to conduct formal discovery prior to the filing of the motion to suppress. Embry at ¶ 28, citing State v.Neuhoff (1997), 119 Ohio App.3d 501, 506 (a Crim.R. 12 motion to suppress is not an alternative to Crim.R. 16 discovery). See, also,State v. Stendahl, Warren CA2005-03-034, 2005-Ohio-7027, ¶ 11. In this case, we find nothing in the record to indicate appellant engaged in formal discovery at any stage of the proceedings.
 {¶ 41} Based on the totality of the record, we find the state met its slight burden to establish in general fashion that the breath test procedures complied with the department of health regulations. We therefore find no error by the trial court with regard to its ruling on the breath test.
 {¶ 42} For the aforementioned reasons, we overrule both issues raised by appellant. *Page 11 
 {¶ 43} Judgment affirmed.
YOUNG and BRESSLER, JJ., concur.
[1] Under the current version of this statute effective August 17, 2006, this subsection became R.C. 4511.19(A)(1)(d).
[2] In his brief, appellant did not raise his arguments in the form of assignments of error as contemplated in App.R. 16(A)(3) and Loc.R. 11(B)(1). Pursuant to App.R. (A)(4), issues presented for review should reference an assignment of error.
[3] During cross-examination of the deputy, counsel for appellant elicited testimony that appellant did not tightly grip the steering wheel, slouch in the driver's seat, gesture erratically or obscenely, swerve or drive erratically while pulling over for the deputy, attempt to flee, slur his speech, possess alcoholic beverage containers, etc. The deputy characterized appellant's roadside demeanor as polite.
[4] As an example of the breadth of appellant's motion, he even alleged the machine used in this instance was not a "BAC DataMaster, BAC DataMaster CDM, or Intoxilyzer Model 5000 Series 66 or 68 EN as required by OAC 3701-53-02."
[5] The trial court instead took the matter under advisement and accepted subsequent written closing arguments from the parties. *Page 1