[Cite as *State v. Reid*, 2013-Ohio-562.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | Case No. 12CA3 |
| vs. | : | |
| HEATHER REID, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Gary D. Kenworthy, Circleville City Law Director, 443 North
Court Street, POB 574, Circleville, Ohio 43113

COUNSEL FOR APPELLEE:      James R. Kingsley, 157 West Main Street, Circleville, Ohio
43113

COUNSEL FOR AMICUS
CURIAE OHIO ASSOCIATION
OF CRIMINAL DEFENSE
LAWYERS:
D. Timothy Huey and Jessica G. Fallon,
2720 Airport Drive, Suite 100, Columbus,
Ohio 43219

COUNSEL FOR AMICUS
CURIAE STATE OF OHIO:
Mike Dewine, Ohio Attorney General, and
Matthew J. Donahue, Ohio Assistant Attorney General, 150
East Gay Street, 16th Floor, Columbus, Ohio 43215

_____

CRIMINAL CASE FROM MUNICIPAL COURT
DATE JOURNALIZED: 2-7-13

PER CURIAM.

{¶ 1}   This is an appeal from a Circleville Municipal Court order to exclude Intoxilyzer

8000 test results from evidence in the trial of Heather Reid, defendant below and appellee herein.

Authorities had charged Reid with operating a motor vehicle with a prohibited breath-alcohol concentration in violation of R.C. 4511.19(A)(1)(h).   Pursuant to R.C. 2945.67, we granted the State of Ohio, plaintiff below and appellant herein, leave to appeal the trial court's evidentiary ruling.

{¶ 2}    Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS THE RESULTS OF HER INTOXILYZER 8000 TEST AND REQUIRING THE STATE OF OHIO TO PROVE BY WAY OF EXPERT TESTIMONY THAT THIS INSTRUMENT WAS ACCURATE AND RELIABLE EVEN THOUGH IT HAD BEEN APPROVED BY THE DIRECTOR OF HEALTH FOR ALCOHOL BREATH TESTING PURPOSES AND THE APPELLEE'S TEST WAS IN ALL RESPECTS ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH THE RULES AND REGULATIONS PRESCRIBED BY THE DIRECTOR."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT CONDUCTED A DAUBERT [V. MERRELL DOW PHARMACEUTICALS, INC., 509 U.S. 579, 113 S.CT. 2786, 125 L.ED.2D 469 (1993)] ANALYSIS TO DETERMINE THE RELIABILITY OF THE PRINCIPLES AND METHODS UPON WHICH THE INTOXILYZER 8000 BREATH TEST RESULTS ARE BASED, IN VIEW OF THE LEGISLATIVE MANDATE PROVIDING FOR ADMISSION OF BREATH TESTS IF ANALYZED IN ACCORDANCE WITH THE METHODS APPROVED BY THE OHIO DIRECTOR OF HEALTH."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN CONDUCTING A JUDICIAL REVIEW OF A QUASI LEGISLATIVE REGULATION OF THE OHIO DEPARTMENT OF HEALTH WHEN A CHALLENGE TO THE VALIDITY OF SUCH REGULATION MUST BE MADE UNDER THE DECLARATORY JUDGMENT ACT PROVISIONS OF R.C. 2721.03 OR AN ADMINISTRATIVE APPEAL UNDER THE R.C. 119.12 [SIC] AND FILED IN THE COMMON PLEAS COURT."

{¶ 3}   On February 7, 2011, law enforcement authorities charged appellee with (1) operating a motor vehicle with a prohibited breath-alcohol concentration in violation of R.C. 4511.19(A)(1)(h), and (2) failure to dim headlights in violation of R.C. 4513.15.   Appellee moved to suppress the breath test results and argued that the Intoxilyzer 8000 is not a proven, reliable method to accurately detect breath-alcohol concentration.   After a hearing, the trial court held that it would permit the state to introduce the test results into evidence if it could demonstrate the instrument's reliability.   After a further hearing, and based upon stipulated testimony, the court determined that the state failed to show that the Intoxilzyer 8000 is a reliable breath testing instrument.   The court stated:

> "there are too many questions with RFI [radio frequency interference], sample size of the chamber, volume of the sample tested, possible operator manipulation of the results, possible [manufacturer] modifications of the software without the knowledge of ODH and slope detector inadequacy to permit the court to say that the instrument is accurate and reliable."

Thus, the trial court excluded the Intoxilyzer 8000 test results and found appellee not guilty.[1]   We granted the state leave to appeal the trial court's evidentiary ruling.

{¶ 4}   Because appellant's three assignments of error assert that the trial court improperly

---

[1]   We recognize that the trial court does not appear to have disposed of the failure to dim headlights charge.   We do not believe, however, that this "hanging charge" renders us without jurisdiction to consider this appeal.   Instead, even if the court's judgment is not a final, appealable order, R.C. 2945.67 creates an exception to the final, appealable order rule.   State ex rel. Steckman v. Jackson, 70 Ohio St.3d 420, 438-439, 639 N.E.2d 83 (1994) (observing that interlocutory orders are neither final nor appealable but recognizing that "[a]n exception to this rule is the state's right to appeal 'by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *'"), quoting R.C. 2945.67; State ex rel. Mason v. Burnside, 117 Ohio St.3d 1, 2007-Ohio-6754, 881 N.E.2d 224, ¶13.   Accord State v. Jackson, 192 Ohio App.3d 617, 2011-Ohio-986, 949 N.E.2d 1070 (9th Dist.), ¶7 ("If the General Assembly had intended to limit this court's discretion under R.C. 2945.67(A) to final orders, it could have said so.").

suppressed the Intoxilyzer 8000[2] results and raise related issues, we combine them for ease of review.

**{¶ 5}**   In its first assignment of error, appellant asserts that the trial court improperly determined that the Intoxilyzer 8000 results are inadmissible in the absence of expert testimony to demonstrate the machine's reliability.   In its second assignment of error, appellant asserts that the trial court wrongly employed Daubert principles to analyze the admissibility of the Intoxilyzer 8000 results.   Both assignments of error assert, in essence, that in view of the fact that the Ohio Director of Health (ODH) has approved the use of the Intoxilyzer 8000, the trial court need not, and may not, conduct any inquiry into the device's reliability.   Thus, appellant contends, the ODH's approval of the Intoxilyzer 8000 renders those test results ipso facto admissible.   In its third assignment of error, appellant argues that the trial court's review of the ODH's regulation regarding the Intoxilyzer 8000 is improper in the context of a motion to suppress evidence. Appellant contends that any challenge to the regulation must be made pursuant to a request for a declaratory judgment or other administrative action.

**{¶ 6}**   Generally, trial courts possess broad discretion to determine whether to admit, or to exclude, evidence.   E.g., State v. Morris, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶19.  Consequently, an appellate court ordinarily reviews a trial court's evidentiary ruling under the abuse-of-discretion standard of review.   Id.   The abuse-of-discretion standard is not

---

[2]   We observe that the state framed its assignment of error as challenging the trial court's decision regarding appellee's motion to suppress evidence.    Our decision to grant the state leave to appeal, however, noted that we granted leave to appeal the trial court's evidentiary ruling that excluded the test results at trial.    We will not elevate form over substance, but simply point out the difference to explain why we are not setting forth our standard of review from a trial court's decision regarding a motion to suppress evidence.

appropriate, however, when a trial court's decision is based upon an erroneous interpretation of the law.  Id.  Instead, whether a trial court properly applied the law presents a legal question that an appellate court reviews independently and without deference to the trial court.  Id. at ¶16.

{¶ 7}   In the case sub judice, appellant challenges the trial court's application of the law when it decided to exclude the Intoxilyzer 8000 test results from the evidence.   Appellant contends that in doing so, the trial court misinterpreted the applicable law.   As we pointed out above, because the proper interpretation of the law is a question of law, we need not defer to the trial court's decision and instead, must independently, and without deference, review the trial court's decision.

{¶ 8}   R.C. 4511.19(D)(1)(b) governs the admissibility of evidence regarding a defendant's breath-alcohol concentration:

> In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. * * * *
> The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code.

{¶ 9}   R.C. 3701.143 grants the ODH the authority to approve techniques or methods to chemically analyze a person's breath to determine alcohol content.   Under 3701-53-02, the ODH approved the "Intoxilyzer model 8000 (OH-5)" as an "evidential breath testing instrument[] for use in determining whether a [defendant]'s breath contains a concentration of alcohol prohibited" under R.C. 4511.19.

{¶ 10}  R.C. 4511.19 is a "gate-keeping statute," State v. Mayl, 106 Ohio St.3d 207,

2005-Ohio-4629, 833 N.E.2d 1216, ¶20, and prevents a defendant from making "a general attack

upon the reliability and validity of the breath testing instrument." State v. Vega, 12 Ohio St.3d

185, 190, 465 N.E.2d 1303 (1984). Through the enactment of R.C. 4511.19, the legislature has

determined that "intoxilyzer tests are proper detective devices" and has "legislatively resolved the

questions of reliability and relevancy of intoxilyzer tests." Id. at 188. The legislature has thus

determined

> "'that breath tests, properly conducted, are reliable irrespective that not all experts
> wholly agree and that the common law foundational evidence has, for admissibility,
> been replaced by statute and rule; and that the legislative delegation was to the
> Director of Health, not the court, the discretionary authority for adoption of
> appropriate tests and procedures, including breath test devices.'"

Id. at 188–189, quoting State v. Brockway, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (1981).

Accord State v. Harris, 4th Dist. No. 03CA760, 2003-Ohio-3476, ¶16. Consequently, the Ohio

General Assembly has rendered the ODH's approval of the Intoxilyzer 8000 ostensibly impervious

to general reliability and admissibility challenges during a criminal trial.

{¶ 11} Since Vega, courts have agreed that a defendant may not challenge the general

reliability of an ODH-approved chemical analysis technique or method to detect a defendant's

bodily alcohol concentration. E.g., State v. Mongeau, 3rd Dist. No. 13-12-21, 2012-Ohio-5230,

¶19 (defendant may not make a general attack on DataMaster testing procedure); State v. Urso, 195

Ohio App.3d 665, 2011-Ohio-4702, 961 N.E.2d 689, ¶91 (11th Dist.) (defendant could not

challenge general reliability of DataMaster); State v. Klintworth, 4th Dist. No. 10CA40,

2011-Ohio-3553, (defendant may not attack general reliability of urine testing procedure);

Columbus v. Aleshire, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317 (10th Dist.)

(defendant may not make general attack on breath testing device); State v. Fisher, 1st Dist. No.

C-080497, 2009-Ohio-2258, ¶30 (defendant may not attack breath tests in general); State v. Luke, 10th Dist No. 05AP-371, 2006-Ohio-2306; State v. Davis, 4th Dist No. 03CA16, 2004-Ohio-1226; State v. Brown, 4th Dist. No. 01CA13, 2002-Ohio-6129, ¶39; Lakewood v. Horvath, 8th Dist. No. 75135 (Nov. 4, 1999) (defendant may not challenge use of breath testing machines in general); State v. Melms, 131 Ohio App.3d 246, 252, 722 N.E.2d 159 (3rd Dist. 1999); State v. Hill, 4th Dist. No. 92CA30 (May 21, 1993); State v. Lyle, 4th Dist. No. 1733, (May 8, 1992).   But, see, Parma v. Dempsey, 8th Dist. No. 96351, 2011-Ohio-6624, ¶¶23 and 29 (Gallagher, J., dissenting) (expressing concern that courts, pursuant to legislative pronouncement, lack authority to determine admissibility of technical evidence when it has not been "vetted for reliability").

{¶ 12}  We, however, believe that a close reading of Vega arguably leaves room for debate about whether a trial court must admit Intoxilyzer 8000 results into evidence.   Vega stated, in broad terms, that a defendant may not make a general challenge to the reliability and validity of an ODH approved breath testing instrument.   The court stated that an "accused may not make a general attack upon the reliability and validity of the breath testing instrument."   Id. at 190.   The court also stated that an "accused may attack the reliability of the specific testing procedure," but not in a motion to suppress evidence.   Id. at 189.   The court explained that the attack upon the reliability of the specific testing procedure involves evidentiary weight, not admissibility, and appears to permit a defendant to challenge to the reliability and validity of a specific testing procedure, and the adherence to rules for the instrument's operation.

{¶ 13}  Part of the problem in interpreting the true meaning of the Vega language is that it is not clear what the terms "general attack" and "specific testing procedure" mean.   The "general attack" language seems to indicate that a defendant cannot generally attack the reliability of

approved breath testing instruments, but may specifically attack a particular instrument's reliability. As the cases cited above make apparent, this has not been the universal interpretation of Vega. Instead, courts have interpreted Vega to mean that if the ODH has approved a breath testing device, that device is not subject to a reliability challenge–whether general or specific. Rather, challenges could be made concerning the compliance with specific testing procedures and methods for individual tests, and whether particular test results are reliable.

{¶ 14} Another problem that Vega did not address is the permissive language in R.C. 4511.19(D)(1)(b). The statute's language does not absolutely require a court to admit evidence from an instrument that the ODH has approved, but, instead, states that a court "may admit" such evidence. Thus, the statute apparently affords a trial court discretion to determine whether to admit breath-alcohol tests into evidence. We observe, however, that the Vega dissent raised many of these same arguments and the Vega majority obviously was aware of those arguments, but apparently remained unswayed. While we may share some of the dissent's concerns, we cannot simply overlook the majority's holding and favor the dissent's rationale.

{¶ 15} Consequently, in view of the long line of authority from Ohio courts, we believe that in the case subjudice the trial court erroneously excluded the Intoxilyzer 8000 alcohol test results. Based upon the current state of the law, we do not believe that Vega permits a defendant to mount a general reliability challenge to the Intoxilyzer 8000, an instrument that the ODH has approved for use in these circumstances. We recognize that the Ohio Supreme Court may decide to reconsider Vega in light of subsequent changes in the legal landscape, but until it does so, we are bound to follow Vega and may not reach a contrary decision. Although we may agree that many problematic reliability issues surround the design of the Intoxilyzer 8000 and the instrument's

approval process[3], we must follow both the legislative directive and the Ohio Supreme Court's pronouncement in <u>Vega</u>.   We again emphasize, however, that we welcome further review of this issue so as to end the uncertainty percolating in the lower courts regarding Intoxilyzer 8000 reliability and test result admissibility.   A review of the ODH approval process and the instrument's design and performance reveal that many serious issues and concerns have been identified and warrant further inquiry.   We recognize that it would be impractical?? to permit a defendant to attack an instrument's design and reliability in every case, but some accommodation should be made when valid reasons exist to question a particular instrument's reliability.

{¶ 16}  Accordingly, based upon the foregoing reasons, we sustain appellant's first and second assignments of error.   Our resolution of the first two assignments of error renders appellant's third assignment of error moot.   See App.R. 12(A)(1)(c).   Therefore, we reverse the trial court's decision that the Intoxilyzer 8000 is not a reliable method to determine a person's breath-alcohol concentration and to exclude the alcohol test results.   However, because R.C. 2945.67 does not allow the state to appeal a final verdict, we may not disturb the trial court's judgment that found appellee not guilty of operating a motor vehicle with a prohibited breath alcohol concentration.

JUDGMENT AFFIRMED IN PART AND
REVERSED IN PART.

---

[3] For a summary of some of the problems that the defense bar has raised regarding the Intoxilyzer 8000, see Weiler and Weiler, Ohio Driving Under the Influence Law, Section 8:17 (2012-2013 Ed.).

McFarland, P.J., dissenting:

{¶ 18} I respectfully dissent. This case presents significant issues relating to a defendant's constitutional due process right of confrontation as well as the trial court's role as the "gatekeeper" for scientific evidence.   These rights and the trial judge's gatekeeper role of trial evidence is of great importance to our system of justice and fundamental fairness. I also acknowledge and yield to the role of the Ohio General Assembly in enacting R.C.4511.19(D)(1)(b) and the holding of <u>Vega</u> which states that the court "<u>may admit</u>" and not "shall admit" the evidence at issue herein. (Emphasis added.)

{¶ 19} However, the trial judge correctly noted and distinguished that <u>Vega</u> was decided in 1984 when a chemical test included a rebuttable presumption of intoxication unlike today with a per se prosecution. Further, I view the challenge herein to be one attacking a particular instrument and not a general "shotgun attack."   So, it appears <u>Vega</u> is distinguishable and permits a review under Evid.R. 104 as to the relevancy and reliability of evidence other than via a motion to suppress. And, this is consistent with the important gatekeeper's function of the trial court.

{¶ 20} As such, I dissent and like the majority opinion, hope the Supreme Court of Ohio finds reason to review this area of the law to crystalize these important issues.

## JUDGMENT ENTRY

It is ordered that the trial court's judgment be affirmed in part and reversed in part,

consistent with this opinion.   Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleville

Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

Abele, J. & Kline, J.: Concur in Judgment & Opinion
McFarland, P.J.: Dissents with Dissenting Opinion

For the Court

BY:_____

Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and
the time period for further appeal commences from the date of filing with the clerk.