[Cite as *State v. Bevilaqua*, 2013-Ohio-4120.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NOS. 2012-P-0140 and 2012-P-0141** |
| FRED R. BEVILAQUA, | : | |
| Defendant-Appellee. | : | |

Criminal Appeals from the Portage County Municipal Court, Ravenna Division, Case Nos. R2012 TRC 06907 and R2012 CRB 01376.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Robert Roe Fox,* 388 South Main Street, Suite 402, Akron, OH 44311 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting a motion to suppress seeking to exclude the results of an Intoxilyzer 8000 test filed by appellee, Fred R. Bevilaqua. This court recently held in *State v. Carter*, 2012-P-0027, 2012-Ohio-5583, that the Intoxilyzer 8000 is presumed reliable, and that the defendant is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000. Based on this

court's precedent in *Carter*, we reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.

{¶2} On May 24, 2012, appellee was arrested for operating a vehicle under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a). At the station, appellee's breath test revealed a blood-alcohol concentration of .132. Thus, he was also cited for OVI pursuant to R.C. 4511.19(A)(1)(d).

{¶3} Appellee filed a motion to suppress and later supplemented his motion seeking to exclude his breath test results due to the unreliability of the Intoxilyzer 8000. The state filed a memorandum in opposition to appellee's challenge to the general reliability of the breath-testing device, arguing it was not required to present evidence that the Intoxilyzer 8000 is reliable because the legislature had delegated this determination to the Director of Health, and the Supreme Court of Ohio upheld this delegation of authority in *State v. Vega*, 12 Ohio St.3d 185 (1984).

{¶4} After considering the parties' respective arguments, the trial court granted appellee's motion in limine, holding that the state was required to produce evidence that the Intoxilyzer 8000 is reliable in order for his test results to be admissible at trial. The trial court granted the state's motion to stay execution of the judgment.

{¶5} The state appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶6} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶7} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶8} This court has recently ruled on this exact issue in *Carter, supra*. In *Carter*, this court reversed the trial court's decision requiring the state shoulder the initial burden of production for establishing the general reliability of the Intoxilyzer 8000. This court held that once the state has demonstrated a statutorily-approved, breath-testing device was used, a presumption of reliability attaches. *Carter* at ¶37.

{¶9} Further, this court has held that a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000 in a motion to suppress. *Id*. at ¶43. In *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, this court held:

> {¶10} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While, as discussed above, the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189. *Miller, supra*, at ¶32.

{¶11} Further, In *Miller*, supra, this court ruled a defendant can make "specific challenges to the Intoxilyzer's reliability," and "[a] defendant may * * * challenge the reliability of the Intoxilyzer 8000 with specific arguments * * *." *Id*. at ¶33.

{¶12} Moreover, this court has held that, because the Intoxilyzer 8000 is presumed reliable, the defendant has the initial burden of production to present evidence that the Intoxilyzer 8000 is not reliable. *Carter* at ¶39. If the defendant satisfies his initial burden, the burden of proof then shifts to the state to produce evidence establishing the machine's reliability.

{¶13} The foregoing burden-shifting procedure has long been followed by federal and state courts in the analogous contexts of apparently lawful searches and confessions. With respect to searches following the issuance of a search warrant, a defendant has the initial burden to establish a prima facie case that the search was not lawful. Once that burden is met, the burden shifts to the state to prove the search was lawful. *United States v. Whitten*, 848 F.2d 195, 1988 U.S. App. LEXIS 6485, *3 (6th Cir.); *United States v. Murrie*, 534 F.2d 695, 697-698 (6th Cir.1976); *United States v. Triumph Capital Group, Inc.,* 2003 U.S. Dist. LEXIS 24776, *7-*8 (D.Conn.). Further, "[t]here are shifting burdens in suppression hearings regarding confessions." *United States v. Burnette*, 535 F.Supp.2d 772, 782 (E.D.Tex.2007). After the defendant satisfies his initial burden to show his confession was the result of a custodial interrogation, the burden shifts to the government to prove the evidence was not illegally obtained, i.e., that the Miranda warnings were given; the defendant waived them; and the confession was voluntary. *Id.* It is worth noting that trial courts typically decide whether the parties met their respective burdens after all evidence has been presented. *See e.g. Triumph*, *supra*, at *8; *Murrie*, *supra*, at 696-698; *Burnette*, *supra*, at 779-780; *State v. Saffell*, 9th Dist. No. 2928, 1995 Ohio App. LEXIS 3060, *2-*4 (Jul. 19, 1995); *United States v. Bonds*, 2006 U.S. Dist. LEXIS 3436, *3-*5 (S.D.Miss.).

4

{¶14} Pursuant to *Carter*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability, in granting Bevilaqua's motion, and in excluding the results of his breath test. Therefore, on remand, he is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000.

{¶15} The state's assignment of error has merit.

{¶16} For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶17} I concur in the judgment of this court, that "the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability." *Supra* at ¶ 15.

{¶18} I write separately, however, because I do not concur that a defendant bears the burden of production when challenging breath test results obtained from the Intoxilyzer 8000 in the context of a suppression hearing for the reasons stated in my

5

concurring/dissenting opinions in *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, and *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584.

**{¶19}** In support of her position, the writing judge analogizes specific challenges to the instrument's general reliability to unconstitutional searches and seizures, such as where a defendant challenges a search that was conducted pursuant to a valid warrant with supporting affidavits. Challenges to the specific reliability of the Intoxilyzer 8000 are more properly understood in the context of challenges to scientific reliability as discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998), rather than in the context of the Fourth Amendment exclusionary rule. A *Daubert/Miller* analysis focuses on the reliability of the underlying scientific principles and/or methodology involved, rather than the reliability of specific test results. *Daubert* at 595; *Miller* at 611-612.

**{¶20}** The problem with analogizing to *Daubert/Miller* to justify shifting the burden of demonstrating unreliability to the defendant is that this court has repeatedly held that the reliability of the Intoxilyzer 8000 cannot be challenged under *Daubert/Miller*. *See Rouse* at ¶ 28 ("appellee's argument that the Intoxilyzer 8000 is unreliable was an attack on the general reliability of a director-approved breath-testing instrument, which is prohibited by *Vega*," accordingly "we maintain a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer"); *Carter* at ¶ 40 (the same).

**{¶21}** The writing judge's present position appears to contradict this court's earlier pronouncements that challenges to the Intoxilyzer 8000 based on its general

6

reliability may not be raised to suppress the test results. In contrast, this court has recognized that such challenges may be properly raised at trial, with the evidence going to the weight rather than the admissibility of the evidence. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 31 (cases cited); *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445, ¶ 24 ("the statutory recognition of the Intoxilyzer 8000's admissibility * * * does not prevent a defendant from introducing evidence as to the general unreliability of this specific machine through the use of expert opinion testimony," where "[s]uch testimony does not challenge the admissibility of the breath test results; rather it challenges the *weight and credibility* to be given to the results").

**{¶22}** The writing judge presents no convincing argument as to why the established procedures for conducting a hearing to suppress breath test results should be ignored when the subject of the motion concerns the Intoxilyzer 8000. With these reservations, I concur in the judgment of this court.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

**{¶23}** R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

**{¶24}** R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from

approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶25} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶26} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

8

{¶27} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶28} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶29} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶30}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶31}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against this backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶32}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶33}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a

reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

**{¶34}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶35}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where the defense asserts that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case, if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

**{¶36}** Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent

11

operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶37} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶38} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered the state to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's

12

order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶39} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶40} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.