[Cite as *State v. Zanni*, 2014-Ohio-2806.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3392 |
| v. | : | |
| | | DECISION AND |
| DAVID M. ZANNI, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 06/24/2014 |

APPEARANCES:

James T. Boulger, Chillicothe, Ohio, for Appellant.

Sheri Rutherford, City of Chillicothe Law Director, and Benjamin A. Sigall, City of Chillicothe Assistant Law Director, Chillicothe, Ohio, for Appellee.

Philip K. Hartmann, Yazan S. Ashrawi, and Stephen J. Smith, Frost Brown Todd LLC, Columbus, Ohio, and John Gotherman, Ohio Municipal League, Columbus, Ohio, for Amicus Curiae the Ohio Municipal Attorneys Association.[1]

Per Curiam.

{¶ 1} David M. Zanni appeals from his conviction in the Chillicothe Municipal Court, for the offense of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(d). Zanni contends that the trial court improperly admitted the results of his Intoxilyzer 8000 breath test. Zanni had filed a pre-trial motion in limine listing several reasons why the Intoxilyzer 8000 is generally unreliable, and argued that the results of the test were thus inadmissible. The trial court overruled the motion in limine, citing this Court's decision in *State*

---

[1] By magistrate's order, this Court requested amicus curiae briefs addressing the issues raised in this appeal from the Ohio Municipal League and the Ohio Association of Criminal Defense Lawyers. While we received an amicus curiae brief from the Ohio Municipal Attorneys Association, we did not receive a brief from the Ohio Association of Criminal Defense Lawyers.

*v. Reid*, 4th Dist. Pickaway No. 12CA3, 2013-Ohio-562, ¶ 15, in which we held that a defendant

is not permitted "to mount a general reliability challenge to the results of the Intoxilyzer 8000[.]"

At the subsequent bench trial, Zanni renewed his objection to the admissibility of the test results,

but the objection was overruled. Based on this Court's precedent in *Reid* and the precedent set

forth in *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), we affirm the trial court's

judgment.

{¶ 2} During the early morning hours of July 4, 2012, Ohio State Highway Patrol

Trooper Bobby Brown observed Zanni commit a traffic violation on High Street in Chillicothe,

Ohio. Trooper Brown proceeded to pull Zanni over. During the traffic stop, Trooper Brown

made several observations that led him to believe that Zanni had been under the influence of

alcohol. Trooper Brown also administered various field sobriety tests. Zanni was then arrested

and transported to the Ross County Sheriff's Office, where he submitted a breath specimen

analyzed by an Intoxilyzer 8000 breath-testing device. The breath test resulted in a reading of

.123 breath alcohol concentration. Zanni was then cited for operating a vehicle under the

influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d), each being a

misdemeanor of the first degree. Zanni was also cited for a turn signal violation under R.C.

4511.39.

{¶ 3} After pleading not guilty to all of the offenses at his arraignment, Zanni filed a

motion in limine requesting that the trial court make a preliminary determination of the

admissibility of the Intoxilyzer test results. Specifically, Zanni challenged the reliability of the

Intoxilyzer 8000 under Evid.R. 702 and 703 of the Ohio Rules of Evidence. The trial court

ordered the parties to submit briefs concerning whether it could entertain a challenge to the

general reliability of the device. Both parties submitted briefs, and ultimately, the trial court

decided that our decision in *Reid* required it to overrule the motion.

{¶ 4} Thereafter, Zanni waived his right to a jury trial and the state dismissed the charge

under R.C. 4511.19(A)(1)(a). The remaining case proceeded to a bench trial.

{¶ 5} At the bench trial, the parties stipulated to Zanni's operation of the vehicle, to the

state's compliance with Director of Health regulations in the operation of the Intoxilyzer 8000, to

probable cause for arrest, and to venue. Zanni also renewed his objection to the admission of the

Intoxilyzer results for the reasons previously stated in his motion in limine. Zanni's objection

was overruled, a printout of the Intoxilyzer test results were admitted, and Zanni was found

guilty of operating a vehicle under the influence of alcohol in violation of R.C.

4511.19(A)(1)(d).[2]

{¶ 6} On appeal, Zanni asserts the following assignment of error:

Assignment of Error:

> The trial court erred to the prejudice of the defendant in overruling without
> hearing his motion in limine challenging upon specific grounds the reliability of
> the breath testing device, an Intoxilyzer 8000, and then admitting into evidence,
> over objection, the machine results at trial. In doing so, the trial court denied the
> defendant the exercise of his right under the confrontation clause of the Sixth
> Amendment of the United States Constitution and Article 1, Section 10 of the
> Ohio Constitution and further denied him the right to substantive due process
> under the Fifth and Fourteenth Amendments of the United States Constitution.

{¶ 7} Zanni asserts that the admission of the Intoxilyzer results, without first determining

the scientific reliability of the device, violated several of his constitutional rights. First, Zanni

contends that his rights under the confrontation clause were violated. Next, he contends that he

was denied his right to substantive due process. Finally, while not explicitly stated in his sole

---

[2] Zanni was also found guilty of the turn signal violation under R.C. 4511.39; but on appeal, he only challenges his conviction under R.C. 4511.19(A)(1)(d).

assignment of error, Zanni argues that the existing law in Ohio violates the separation of powers doctrine.

{¶ 8}   Generally, trial courts possess broad discretion to determine whether to admit, or to exclude, evidence. *E.g., State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19. Consequently, an appellate court ordinarily reviews a trial court's evidentiary ruling under the abuse of discretion standard of review. *Id*. The abuse of discretion standard is not appropriate, however, when a trial court's decision is based upon an erroneous interpretation of the law. *Id*. at ¶ 16. Instead, whether a trial court properly applied the law presents a legal question that an appellate court reviews independently and without deference to the trial court. *Id*.

{¶ 9} R.C. 4511.19(D)(1)(b) governs the admissibility of evidence regarding a defendant's breath-alcohol concentration:

> In any criminal prosecution * * * for a violation of division (A) or (B) of this
>
> section * * * the court may admit evidence on the concentration of alcohol * * *
>
> in the defendant's * * * breath * * * at the time of the alleged violation as shown
>
> by chemical analysis of the substance withdrawn within three hours of the time of
>
> the alleged violation. * * *
>
> The bodily substance withdrawn under division (D)(1)(b) of this section shall be
>
> analyzed in accordance with methods approved by the director of health by an
>
> individual possessing a valid permit issued by the director pursuant to section
>
> 3701.143 of the Revised Code.

{¶ 10} R.C. 3701.143, meanwhile, grants the Ohio Director of Health the authority to approve techniques or methods to chemically analyze a person's breath to determine alcohol

content. The Director of Health has approved the "Intoxilyzer model 8000 (OH-5)" as an "evidential breath testing instrument[] for use in determining whether a [defendant]'s breath contains a concentration of alcohol prohibited" under R.C. 4511.19. Ohio Adm.Code 3701-53-02.

{¶ 11} The seminal case in Ohio, pertaining to whether an accused may attack the general reliability of an approved breath-testing device, is *State v. Vega*, *supra*. In *Vega*, the Ohio Supreme Court held that R.C. 4511.19 prevents a defendant from making "a general attack upon the reliability and validity of the breath testing instrument." *Vega*, 12 Ohio St.3d at 190, 465 N.E.2d 1303 (1984).

{¶ 12} The *Vega* decision noted that, through the enactment of R.C. 4511.19, the General Assembly determined that "[I]ntoxilyzer tests are proper detective devices" and has "legislatively resolved the questions of the reliability and relevancy of [I]ntoxilyzer tests." *Id*. at 188. The *Vega* court further stated that the General Assembly has thus determined that:

> "breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices."

*Id*. at 188-189, quoting *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶ 13} The *Vega* court stressed that "while R.C. 4511.19 creates the presumption that one is under the influence of alcohol if there is a specific concentration of alcohol by weight in one's blood, such presumption is rebuttable." *Id*. at 187.

Under the statute, the accused may introduce any other competent evidence bearing upon the question of whether *he* was under the influence of intoxicating liquor. Rebuttable evidence may include non-technical evidence of sobriety, such as a videotape or testimony by the accused or by witnesses concerning the accused's sobriety and the amount of consumption, as well as technical evidence, such as additional chemical tests and the completion of field sobriety tests. There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. See, *e.g.*, *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 330 N.E.2d 908 [72 O.O.2d 44]. Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed. Accord *State v. Brockway*, *supra*, 2 Ohio App.3d at 232, 441 N.E.2d 602.

(Emphasis Sic.) *Id*. at 189.

{¶ 14} This Court was recently asked to determine whether Intoxilyzer test results should be excluded from evidence on the basis that the device is unreliable. *See Reid*, *supra* (decided February 7, 2013). In *Reid*, we referred to R.C. 4511.19 as a "gate-keeping statute," and ultimately concluded that *Vega* does not permit a defendant "to mount a general reliability challenge to the Intoxilyzer 8000." *Reid*, 2013-Ohio-562, at ¶¶ 10, 15. In support of our decision, we cited numerous cases from various Ohio appellate districts that have followed the basic holding of *Vega*. *See id*. at ¶ 11.

{¶ 15} We further noted that "[a]lthough we may agree that many problematic reliability issues surround the design of the Intoxilyzer 8000 and the instrument's approval process we must follow both the legislative directive and the * * * pronouncement in *Vega*." *Id*. at ¶ 15. We also

implored the Ohio Supreme Court to "further review" the issue "so as to end the uncertainty percolating in the lower courts regarding Intoxilyzer 8000 reliability and test result admissibility." *Id*. We concluded that "until it does so, we are bound to follow *Vega* and may not reach a contrary decision." *Id*.

{¶ 16} Pursuant to *Reid* and *Vega*, we find that the trial court did not err in precluding Zanni from attacking the general reliability of the Intoxilyzer 8000, and in admitting the results of his breath test. We do, however, reiterate our concerns outlined in *Reid*.

{¶ 17} Moreover, we find Zanni's constitutional arguments unpersuasive. For one, we do not believe that the application of *Vega* violates a defendant's due process rights because trial court's retain the authority to suppress test results when the state fails to demonstrate that it followed the testing procedures set forth by the Director of Health, or when the operator was not properly qualified to administer the test. *State v. Lucarelli*, 11th Dist. Portage No. 2012-P-0065, 2013-Ohio-1606, ¶ 27. A defendant's due process rights are further protected because "[a] defendant may also challenge the accuracy of his specific test results at trial and with evidence going to the weight accorded the test results." *Id*.

{¶ 18} Zanni also contends that "[t]o the extent that *Vega* is construed to create an irrebuttable presumption of 'general reliability', it now usurps the trial court's function under Ohio Evid. R. 702 and violates the confrontation and compulsive process clauses of the Sixth Amendment of the U.S. Constitution." [Brief at 8.] The Eleventh District Court of Appeals was recently faced with a similar argument when a defendant argued that Evid.R. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), required courts to assess the reliability of scientific evidence as a prerequisite to admissibility. *See State v. Smith*, 11th Dist. Portage No. 2012-P-0076, 2013-Ohio-640, ¶¶ 11, 18-25. In *Smith*,

the appellate court determined that a *Daubert* hearing was unnecessary as it pertained to the

general reliability of the Intoxilyzer 8000. *Id*. at ¶ 24. In so finding, the *Smith* court relied upon

the Tenth District Court of Appeals decision in *State v. Luke*, 10th Dist. Franklin No. 05FP-371,

2006-Ohio-2306, which stated, at ¶¶ 23-24:

> [T]he General Assembly has legislatively provided for the admission into
>
> evidence of alcohol test results, including breath tests, from tests conducted upon
>
> those accused of violating R.C. 4511.19, so long as such tests were conducted in
>
> accordance with procedures adopted by the Director of the Ohio Department of
>
> Health.
>
> This legislative mandate for admissibility obviates the need for trial courts to
>
> determine admissibility based upon reliability of the processes and methods
>
> underlying the use of breath testing machines. It follows, then, that because the
>
> *Daubert* inquiry involves *only* determinations as to the reliability of the principles
>
> and methods upon which a particular scientific test result is based, the legislative
>
> mandate recognized in *Vega* forestalls the need for any *Daubert* analysis in cases
>
> such as the present one. That is why we agree with the holding of the Fifth
>
> Appellate District that, pursuant to *Vega*, 'an attack on the accuracy and
>
> credibility of breath test devices in general is prohibited. Therefore, there is no
>
> need to determine the reliability of the machine under a *Daubert* * * * standard.'
>
> *State v. Birkhold* (Apr. 22, 2002), 5th Dist. No. 01CA104, 2002 Ohio 2464, ¶ 19.
>
> {¶ 19} We agree that the legislative mandate established by R.C. 4511.19(D)(1)(b)

obviates any need to determine the reliability of the Intoxilyzer under Evid.R. 702. As *Vega*

recognized, the General Assembly has "legislatively resolved the questions of the reliability and relevancy of [I]ntoxilyzer tests." *Vega*, 12 Ohio St.3d at 188, 465 N.E.2d 1303. Moreover, Zanni has failed to cite any authority that establishes that either the legislative mandate or *Vega* interpretation violates one's rights under the confrontation clause. Rather, *Vega* has remained controlling authority for nearly 30 years.

{¶ 20} Next, Zanni contends that the statutory presumption of reliability in the Intoxilyzer 8000 violates the separation of powers between the legislature and judiciary by removing from the judiciary the function of determining the scientific reliability of the machine. Specifically, Zanni contends that the current approach "constitutes nothing more than a shell game that ignores the separation of powers explicit in the state and federal constitutions; a legislative transfer of an express judicial function to the executive branch of government resulting in the manufacture of a presumption of reliability then foisted on the judicial branch." [Brief at 8.]

{¶ 21} As an initial matter, we note that Zanni raised the separation of powers argument in his brief, but he did not specifically assign the issue as error. Appeals are to be decided on "the assignments of error," not supporting written arguments. *See* App.R. 12(A)(1)(b); *State v. Johnson*, 4th Dist. Adams Nos. 11CA925, 11CA926, 11CA927, 2012-Ohio-5879, ¶ 16, fn. 5. Here, Zanni raised this issue as a sub-argument in support of his sole assignment of error, which specifically raised due process and confrontation clause concerns, but made no reference to the separation of powers doctrine. Zanni should have raised this issue in a separate assignment of error. Nonetheless, in the interests of justice we will consider the merits of the argument.

{¶ 22} Zanni's separation of powers argument is grounded upon the notion that the legislative delegation of authority to the Director of Health to determine the reliability of testing

methods and devices infringes upon the Ohio Supreme Court's authority to promulgate rules of evidence. "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Ohio Constitution, Article IV, Section 5(B). "In order to demonstrate [that] the legislature infringed upon the judiciary's power to enact evidentiary rules[,] appellant must demonstrate [that] the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Canino*, 2013-Ohio-551, 986 N.E.2d 1112, ¶ 28 (11th Dist.); *Lucarelli*, 2013-Ohio-1606 at ¶ 31; *State v. O'Neil*, 11th Dist. Portage No. 2012-P-0016, 2013-Ohio-2619, ¶¶ 16-17. " ' When a statute does not conflict with a Rule of Evidence, a statute can control the admissibility of evidence.' " *O'Neil* at ¶ 16, quoting *State v. Cross*, 11th Dist. Lake No. 2004-L-208, 2006-Ohio-1679, ¶ 21.

{¶ 23} "The delegation of authority to the [D]irector of [H]ealth to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence." *Canino* at ¶ 29; *Lucarelli* at ¶ 32; *O'Neil* at ¶ 17. Moreover, nothing in the rules of evidence establish the trial court as the sole gatekeeper with respect to the general reliability of breath-testing instruments. *Id*. To the contrary, "Evidence Rule 102 states that '[t]hese rules shall not supersede substantive statutory provisions.' " *Id*.

{¶ 24} In addition, the statutory presumption of reliability does not usurp the trial court's role as gatekeeper. Because "*Vega* specifically states that a defendant is entitled to produce evidence to assail the particular results of the subject test" it has "preserv[ed] the trial court's role as gatekeeper." *Smith*, 2013-Ohio-640 at ¶ 17. Defendants "may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test, and

otherwise strive to discredit the weight to be given the specific test results * * *." *Canino* at ¶ 32. Thus, we find Zanni's separation of powers argument to be without merit.

{¶ 25} Finally, Zanni asserts that there is a conflict between our holding in *Reid*, and a line of cases from the Eleventh District Court of Appeals. Specifically, Zanni argues that the Eleventh District cases establish that while the Intoxilyzer is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the state failed to prove its reliability. *See, e.g. State v. Carter*, 11th Dist. Portage No. 2012-P-0027, 2012-Ohio-5583, 983 N.E.2d 855, ¶¶ 35, 37, 39, 43; *State v. Rouse*, 2012-Ohio-5584, 983 N.E.2d 845, ¶¶ 32, 35, 36, 39 (11th Dist.); *State v. Bevilaqua*, 11th Dist. Portage Nos. 2012-P-0140, 2012-P-0141, 2013-Ohio-4120, ¶¶ 8-12. Under this line of cases, once a defendant has met his initial burden of presenting evidence that the Intoxilyzer is not reliable, the burden would then shift to the state to produce evidence of the machine's reliability. *Carter* at ¶¶ 39, 43; *Rouse* at ¶ 35; *Bevilaqua* at ¶ 13.

{¶ 26} To the extent that Zanni suggests we disavow our holding in *Reid* in favor of the holdings of the above-cited cases, we are not persuaded. First of all, Zanni ignores Eleventh District jurisprudence that directly conflicts with the cases cited by him. *See State v. Hatcher*, 11th Dist. Portage Nos. 2012-P-0077, 2012-P-0078, 2013-Ohio-445, ¶¶ 20, 24, 29, and *State v. Raynish*, 11th Dist. Portage No. 2012-P-0118, 2013-Ohio-2620, ¶ 19 (both clarifying the *Rouse* and *Carter* decisions, and holding that challenges to the Intoxilyzer 8000's scientific reliability may not be raised pre-trial; but noting that challenges to the presumed intoxication created by the test results may be properly raised at trial, with evidence going to the weight and credibility to be given the test results). Thus, it appears that an intra-district conflict exists in the Eleventh District Court of Appeals. Secondly, other appellate courts have continued to follow *Vega*, and have held

that a defendant may not mount an attack on the general reliability of a breath-testing device. *See*

*Reid*, 2013-Ohio-562, at ¶ 11.

{¶ 27} In the case at hand, Zanni's motion in limine, and subsequent trial objection,

raised several challenges to the general reliability of the Intoxilyzer 8000 breath-testing device.

Zanni did not allege unique challenges to the particular unit. Moreover, Zanni stipulated to the

officer's compliance with Director of Health regulations in connection with the operation of the

unit. As we did in *Reid*, we hold that *Vega* does not permit a defendant to mount a general

reliability challenge to the Intoxilyzer 8000. Unless the Ohio Supreme Court decides to

reconsider the issue, we are bound by the *Vega* decision.

{¶ 28} Accordingly, Zanni's sole assignment of error is overruled and the judgment of

the trial court is affirmed.

JUDGMENT AFFIRMED.

Harsha, J., concurring:

{¶ 29} Although I concede that *State v. Vega* controls the issues properly before us, in my view it does not resolve many of the important issues surrounding the general reliability and admissibility of the test results emanating from the Intoxilyzer 8000. *Vega* is unique in some respects. It is a per curium opinion, thus there is no syllabus law. It is also a certified conflict case but there is no statement in the opinion of the certified question. Those two facts require a careful reading to determine where the holding of the case ends and where the dicta begins.

{¶ 30} There is a statement of the "issue presented" at ¶186, which is: "whether an accused may use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath taking machines in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." Immediately following the statement of the issue, the opinion holds "that an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.* at 186.

{¶ 31} Thus, I do not believe *Vega* addresses an admissibility challenge based upon a separation of powers argument. In fact, the majority opinion in *Vega* states the defendant did "not dispute the fact that the General Assembly may delegate to the Director of Health the determination as to the mechanism which could be used for measuring blood alcohol content of an individual." *Id.* at 188. Although the dissent in *Vega* briefly addresses the separation of powers, the majority clearly did not in its holding.

{¶ 32} As the principal opinion notes, Zanni did not properly preserve the separation of powers issue as an assignment of error in our appeal. And unlike the principal opinion, I do not think we should address it. So I don't, but leave it for another day when it is properly before us.

{¶ 33} *Vega* also points out at FN2 on p. 187 that it does not address whether the Director of Health abused his discretion in approving the Intoxilyzer. Likewise, Zanni presents no assignment of error concerning that issue. But one must wonder how the Director could determine the general reliability of the Intoxilyzer 8000 in light of its manufacturers' refusal to provide access to the "source codes" and other protocols used in developing the instrument. In my view whether the Director abused his discretion is another question that should be addressed in the future.

Hoover, J., dissenting:

{¶ 34} I respectfully dissent from the per curiam decision, because I believe the existing presumption of reliability infringes upon an accused's constitutional right of confrontation; the trial court's role as "gatekeeper" for scientific evidence; and the separation of powers doctrine. *See Reid* at ¶ 17 (McFarland, J., dissenting) ("These rights [constitutional due process right of confrontation] and the trial judge's gatekeeper role of trial evidence is of great importance to our system of justice and fundamental fairness."); *Vega*, 12 Ohio St.3d at 190-191, 465 N.E.2d 1303 (Brown, J., dissenting) ("The admissibility of relevant evidence is a judicial function. * * * The issue of relevancy or admissibility of evidence cannot be usurped by the legislature nor delegated by the legislature to the Director of Health. The constitutional principle of separation of powers among the branches of government demands this conclusion.").

{¶ 35} Moreover, R.C. 4511.19(D)(1)(b) merely states that a court "may admit" evidence from a Director of Health approved device. Thus, the General Assembly apparently wished to afford trial court's discretion in determining whether to admit breath alcohol tests into evidence. *Reid* at ¶ 14; *Vega* at 190 (Brown, J., dissenting).

{¶ 36} In light of the foregoing, I dissent from the majority opinion. I also implore the Ohio Supreme Court to address these issues in the near future in order to give direction and clarity to the citizens, law enforcement, and the court systems.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment & Opinion.
Harsha, J.: Concurs with Concurring Opinion.
Hoover, J.:  Dissents with Dissenting Opinion.

For the Court

By:_____
      Peter B. Abele, Presiding Judge

By:_____
      William H. Harsha, Judge

By:_____
      Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.